FRENCH ET AL v. THE CITY OF BURLINGTON.

1. **Municipal Corporations**: CONSTITUTIONAL LAW: INDEBTEDNESS. No indebtedness, for whatever purpose created, is exempted from the prohibition of the constitutional provision limiting the indebtedness which may be incurred by municipal corporations to an amount equal to five per cent of their taxable property.

2. ——: ——: ——. The party who becomes the creditor of a municipal corporation must at his peril take notice that its indebtedness is not in excess of the constitutional limitation.

3. ——: ——: ANTICIPATION OF REVENUE. While the revenues which are absolutely certain to be received by the collection of taxes may, to some extent at least, be anticipated, the rule should not be so far relaxed as to impair the force of the constitutional provision, or nullify its spirit.

4. ——: ——: ——. Uncollected taxes and special assessments may be regarded as available up to the time of the annual tax sale; but after that time the city has the burden to show that they have any value, before they may be estimated in determining the authority to contract a proposed debt.

5. ———: IMPROVEMENT OF STREET: ABUTTING OWNERS. A majority of the resident owners upon the particular street to be improved must petition therefor before the city can authorize the work to be done.

*Appeal from Des Moines District Court.*

WEDNESAY, APRIL 5.

THE petition states that plaintiffs are residents of the city of Burlington, and that said city is in debt over and above the constitutional limit; that a certain street tax levy has been made by the city authorities which is illegal and void, and that certain contracts have been made by the city for grading certain named streets and an indebtedness thereby incurred over and beyond the current revenues of the city, and that the same is therefore illegal and void; that the plaintiffs are owners of abutting property on the streets thus to be graded, a portion of the expense of such contemplated improvement will be assessed on them or rather on the property owned by them as a special assessment or tax, and that said improvement is illegal, because it embraces several streets and parts of streets, and proper bids could not be made and the authorities could not determine which was the lowest. The answer admits that the city is indebted beyond the constitutional limit, and admits the making of the contemplated improvement and the contracting of an indebtedness therefor, but insists that such indebtedness can be met and liquidated by means of the current revenues of the city, and denies that such contracts or indebtedness created therefor are illegal, and also denies the illegality of the street and other taxes complained of. An injunction was asked, which was granted, and at the hearing made perpetual as to the taxes and refused as to the street contracts or improvements. The plaintiffs alone appeal.

*Hall & Baldwin*, for appellant.

It is only where the contract made by the municipal corporation pertains to its ordinary expenses and is, together with other like expenses, within the limit of its current rev-

enues, and such special taxes as it may legally and in good faith levy, that the contract does not constitute the incurring of indebtedness in excess of the constitutional limit. (*Scott v. Davenport*, 34 Iowa, 208; *Grant v. Davenport*, 36 Id., 403.) The city cannot join in a single assessment the cost of constructing sidewalks on different streets. (*Arnold v. Cambridge*, 106 Mass., 352; 2 Dill. on Mun. Corp., § 638, note 1.)

*S. K. Tracy*, for appellee.

The constitutional limitation upon the indebtedness of cities. has no reference to the making of improvements. (*Rice v. City of Keokuk*, 15 Iowa, 579.) In making improvements upon streets they are not creating a debt prohibited by the constitution. (*Scott v. Davenport*, 34 Iowa, 208; *Grant v. Davenport*, 36 Id., 396.) The manner of doing the work and letting the contract is discretionary with the city and until there is an affirmative showing of injustice or illegality, a court of equity will not interfere with the exercise of its discretion. Mere irregularity in detail will not invalidate the assessment. (*Parker v. Challis*, 9 Kan., 115; Dill. on Corp., § 737; *Cobb v. Smith* 16 Wis., 661; *Smith v. Leavenworth*, 9 Kan., 298.) An injunction restraining the collection of taxes will not be granted if it will be productive of detriment to the public. (*Dowes v. Chicago*, 4 Am. Law Times, 107; *Cobb v. Smith, supra.*)

SEEVERS, CH. J.—It will be seen from the statement of the case that three questions arise:

1. Whether the contracting of an indebtedness by the city for the necessary improvement of the streets is within the constitutional inhibition.

2. Whether the indebtedness thus contracted can be paid out of the current revenues.

3. Whether the contracts are legal and binding on the plaintiffs, as abutting property owners.

These questions will be considered in the order above stated.

I. The constitutional provision is as follows: " No municipal corporation shall be allowed to become indebted in any

**1. MUNICIPAL CORPORATIONS: INDEBTEDNESS: CONSTITUTIONAL LAW.** manner or for any purpose to an amount in the aggregate exceeding five per cent on the value of the taxable property within such corporation—to be ascertained by the last State and county tax lists previous to the incurring of such indebtedness." Const., Art. 11, Sec. 3. This language is exceedingly broad, and should have no narrow or strained construction placed thereon. The proper rule seems to us to be the one recognized in *Grant v. The City of Davenport*, 37 Iowa, 396, in which Cole, J., says: " We are not, by any means, inclined to limit or restrain the meaning of the word 'indebtedness,' as there used, so as to confine it to debts evidenced by bond, or to those which are due simply, but rather to give the word its fair and legitimate meaning and general acceptation." If such a rule should be applied to the word "indebtedness," why not to those immediately following it. Or, in fact, why is not the same rule applicable to the whole section. It seems to us that no other construction than the one adopted can be given to this important constitutional provision. If this be true, the words " shall not become indebted in *any manner* or for *any purpose* " have an important bearing on the question at issue. If the indebtedness is created for any purpose, it is within the constitutional inhibition. Certainly those words include the necessary as well as convenient improvement of the streets as well as all other things deemed necessary and proper for the comfort or health of the people of the city. It matters not how, or for what purpose the indebtedness is incurred, it is prohibited, unless it can be shown to be reasonably certain such indebtedness can be liquidated and paid from the ordinary current revenues of the city.

And he who contracts with a city, whereby an indebtedness is created, must at his peril take notice of the financial standing and condition of the city, and whether the proposed indebtedness is in excess of the constitutional limitation. Any other rule leaves the taxpayer at the mercy of the officers of the city and contractor, and would

render the constitutional provision nugatory. Such a result cannot be contemplated or allowed to prevail. We have heretofore held that a city may retain and apply its current receipts or revenues in payment of its proper, ordinary and current expenses, even against a judgment creditor. *Coy v. The City of Lyons*, 17 Iowa, 1; *Coffin v. Davenport*, 26 Id., 515. That the improvement of streets by grading is a proper and legitimate expense will be, it is presumed, conceded; and it will be likewise conceded, it is believed, that the city authorities alone can determine when and in what manner the streets should be improved or graded, and that the action or determination of the authorities of the city cannot be reversed or controlled by the courts. Be this, however, as it may, no question is made that the improvements in question were not necessary or proper. It, however, makes no difference in a constitutional sense whether the improvements were necessary or not, for no such exceptions are contained in the constitution.

II. In ascertaining whether the contemplated indebtedness is within the current revenues, a fair and perhaps liberal view should be taken of the finances of the city. It will not do to say that the revenue which is absolutely certain to be received by the collection of taxes may not be anticipated to at least some extent and an indebtedness accordingly contracted. But, on the other hand, the rule should not be so relaxed as to practically render the constitutional limitation nugatory. The real difficulty lies in properly applying these principles to the facts in each particular case. A brief reference to the material facts is therefore necessary. It satisfactorily appears that the ordinary revenue of the city from all sources does not exceed sixty-five thousand dollars a year, and yet the finance committee in their report, which the recorder of the city testifies is correct, states that the receipts of the city for one year amounted to upwards of two hundred thousand dollars, and among the payments made for the same period is one hundred and twenty thousand dollars of city warrants, which could only be legitimately paid out of the current revenues. The report also shows there was less than

3. ——: ——: anticipation of revenue.

ten thousand dollars in the treasury at the beginning of the year and that there was nearly twenty-five thousand dollars in the treasury at the end of the year, after making the foregoing payments. This report is susceptible fortunately of explanation. In the first place, the city has a judgment and sinking fund raised for a special purpose, and there was about thirty thousand dollars in the treasury not immediately required for the purposes raised, and it was borrowed or used in the payment of ordinary city warrants, and the finance report shows that near eighty thousand dollars of the two hundred thousand was paid into the treasury on account of those funds; besides this, the report shows that near twenty-five thousand dollars was raised and paid into the treasury by getting warrants discounted. But this is not all. It appears that the great bulk of the tax levy is paid in the month of February, and the report of the finance committee embraces the period of thirteen months and includes the month of February in two years. If the city was able to pay the indebtedness from the current revenues, the foregoing extraordinary statement would never have been made. Leaving out of view the judgment and sinking funds, and looking alone to the ordinary revenue for the payment of the ordinary indebtedness, it is clearly apparent from the report of the finance committee that it required the revenues of two years to pay the warrants paid in the period of thirteen months. And yet it appears there were at the time warrants outstanding to a larger amount than the money in the treasury. While the revenues may be anticipated and debts contracted in reference thereto, we are unwilling to sanction any such state of things as shown in this case. When it takes the revenues of two years to pay the indebtedness incurred in one or previously, we are of the opinion the constitutional limitation should be applied to the contracting of any further indebtedness. If the ordinary revenues are not sufficient for the payment of the current expenses, the improvement of the streets must be postponed for a time. The judgment and sinking funds were raised for a special purpose. It is true, the money belonged to the city in one sense and in another it did not,

for the city was the trustee, merely holding the funds until required for the purposes intended. The diversion of the money was a misappropriation done without the authority of law, and where the taxpayer complains of such diversion we are unwilling to sanction any such proceeding. No such subterfuge can be permitted to prevail for the purpose of upholding an otherwise unconstitutional indebtedness.

It appears that there are certain taxes and special assessments due the city which have remained uncollected for a longer or shorter period, and it is claimed the amount due and arising from these sources should be estimated in ascertaining the resources of the city. It affirmatively appears, to some extent at least, that these taxes are worthless in the opinion of the city officers, nor do they testify what portion if anything can be realized therefrom. Up to the time of the annual tax sale, these taxes should be regarded as available assets. But after that period we are of opinion, and so hold, the burden is on the city to show that such taxes have any value before they should be counted or deemed available assets for the purpose of meeting a proposed indebtedness. We are unable to come to any other conclusion than that at the time of the contracting of the indebtedness in question the city was indebted beyond an amount that could be realized from its current revenues even by anticipating the same for the following year, and that for this reason an injunction should have been granted and made perpetual in the court below.

III. It is claimed by the counsel for the city that, as the contracts were to be completed by the first day of June, A. D. 1875, and that, as "equity will presume that to have been done which ought to have been done, and therefore this court will presume that on the first day of June these contracts were completed and paid for at the prices agreed upon." No authority is cited in support of this proposition, and we are unable to agree therewith. To presume in the absence of all testimony whatever that the contracts were finished at the time agreed upon, and the city promptly paid the contractors, is too violent a presumption for us to make; nor does the principle

French v. The City of Burlington.

referred to by counsel apply to any such case as this. Counsel insists as a matter of fact that the work was finished and paid for at the time the final decree was made in the court below, but he has not called our attention to any testimony so showing. We are unable to determine whether the claimed facts exist or not, and are, therefore, relieved from the necessity of determining what would be the effect if it appeared from the record that an injunction now issued would be useless and entirely nugatory.

IV. As we understand, a portion of the expense of the grading or improvement referred to, under the charter and ordinances of the city, may be assessed on the abutting property and another portion must be paid by the city. The plaintiffs are owners of abutting property and seek to restrain the city from levying or assessing any of the expense on their property, for the reason that the grading was done on several different streets in no wise connected with each other, and that no authority exists to combine these several improvements together and make each abutting owner pay his proportion of the expense of the whole, instead of the particular street on which his property is situate. And it is claimed the work on each street should be let separately, and that proposals for bids should be made accordingly. It is also claimed if this is not done the contract for the several streets may be let to the lowest bidder for the whole, while one street could be graded for much less than another. The charter empowers the city to provide by ordinance for curbing and grading *any* street, upon the written request of a majority of the resident owners of abutting property. We think it clear from this provision of the charter that a majority of the resident owners of abutting property on the particular street to be graded must petition therefor before the city council can legally pass the ordinance. There is no complaint made that such consent was not obtained, but it is insisted that the proposal for the work is objectionable and illegal. The advertisement for bids was as follows: "Sealed proposals will be received * * *

for the grading, macadamizing, curbing and . guttering of Marshall from Jefferson to Smith street, Smith street to Pond street, Pond street to Amelia street and Amelia street to its intersection with Lebuck street." * * * It does not necessarily follow that a bid for the whole of this work would have been accepted; on the contrary, we think the fair construction is that bids were solicited separately for each street to be improved. It affirmatively appears that the improvement of Pond street was let to two different persons, a part to one and the residue to another, and in what manner the residue was let does not appear. Nor is it shown in what manner the expense was assessed on the property of the plaintiffs. In this respect *Arnold v. Cambridge*, 106 Mass., 352, cited by counsel, is different. In the case cited it was shown that a proportion of the whole expense of improving two different streets had been assessed on the property of the plaintiff, which abutted only on one. We are unable to see how the plaintiffs could have been prejudiced by the advertisement for bids for the work; and in every other respect, for aught that appears, the action of the city authorities appears to have been in strict accord with law.

A decree will ·be entered here or the case remanded to the court below, at the option of counsel, with directions to enter a decree there in accordance with this opinion.

REVERSED.