## THE CITY OF COUNCIL BLUFFS v. STEWART.

1. **Equitable Jurisdiction:** TRESPASS: INJUNCTION. While courts of equity will, under certain circumstances, interfere by injunction to prevent repeated trespasses upon real estate, yet in such case it must be made to appear that the injury would be irreparable, or that adequate compensation could not be obtained therefor.

2. **Municipal Corporations:** CONSTITUTIONAL LAW: LIMIT OF INDEBTEDNESS. The constitutional restriction upon the creation of municipal indebtedness includes not only bonded debt but all forms of indebtedness.

3. ———: ———: ———. Uncollected taxes and the levy for the current year are not to be deducted from the outstanding debt for the purpose of ascertaining the real indebtedness.

*Appeal from Pottawattamie District Court.*

THURSDAY, JUNE 12.

On the 8th day of January, 1879, the plaintiff filed a petition in substance alleging that about the month of October, 1878, the plaintiff, by virtue of authority vested in it by law, determined to open up a certain street or avenue, from the intersection of Chestnut and Broadway streets to the Union Pacific depot, in said city, and ordered the condemnation of private property for the establishment and opening of said

street; that the defendant was the owner of certain real estate in the city of Council Bluffs, over and across which the said avenue would pass, and the plaintiff caused notice to be served on defendant of the appropriation of his real estate for said avenue, and that the same would be condemned on the 24th day of December, 1878, and a jury would be impanelled to assess and award the defendant the damages which he would sustain; that a jury properly impanelled for that purpose awarded to the defendant damages in the sum of one thousand four hundred dollars; that on the 25th day of December, 1878, the plaintiff placed in the hands of the sheriff of Pottawattamie county the said sum of one thousand four hundred dollars for the use of the defendant for the appropriation of his real estate, which sum defendant refused to accept in payment for said property; that after the condemnation proceedings, and the payment of the money to the sheriff, the defendant refused to vacate and surrender to plaintiff the possession of said lots, but took possession of the buildings thereon, which are ice-houses, and is filling them with ice, and has trespassed and is continuing to trespass upon the said property of plaintiff, a continuance of which trespasses will greatly retard the opening of said avenue, and cause irreparable injury to plaintiff; that plaintiff is now ready and will have immediate funds for the opening of said avenue, and that if the defendant is allowed to use said premises, for the packing of ice or other purpose, the plaintiff will be delayed in making said improvement, and that the acts of the defendant are for the purpose of causing such delay. The plaintiff asks that a temporary injunction issue, restraining the defendant from packing ice, or otherwise occupying and using said premises, and that by final decree the writ be made perpetual. On this petition an order was made by the district judge, without notice to the defendant, granting a temporary writ of injunction as prayed.

On the 10th day of January, 1879, the defendant filed an answer and cross-petition. The answer denies that defendant

refused to yield possession of the property in controversy for the purpose for which it is alleged to have been condemned; denies that any demand was ever made upon him for the property; denies that he was ever notified of the amount of the award of the sheriff's jury, or that the amount of said award had been deposited with the sheriff; denies that he has done any act whatever, in relation to the property in controversy, for the purpose of hindering or delaying the plaintiff in the opening and establishing of Union avenue, and denies that anything he has done has hindered or delayed plaintiff in that respect in any manner.

The answer alleges that all the defendant has done has been for the purpose of preventing great and irreparable injury to himself; that said proposed avenue is some two miles in length, and that, although all the property embraced within the limits of said avenue is to be condemned or the right of way otherwise provided for, no right of way has been procured, either by purchase or condemnation, for any portion of said avenue, except of the said property of defendant, which is situated about midway of said avenue; that the pretended condemnation was not made because there was any present public necessity therefor, but for the purpose of annoying the defendant, and to cause great and irreparable injury to his business; that defendant has been informed that the said sheriff's jury awarded defendant only the sum of one thousand four hundred dollars, of which amount nine hundred and fifty dollars is for the buildings, which alone are of the actual value of three thousand dollars; that the said property consists of five large-ice houses and the property on which they are situated, which are of imperative necessity in defendant's business as a pork-packer; that to have replaced them and have them ready for immediate use was impossible, and if the same could have been done it would have been at an expense of not less than three thousand dollars; that it was impossible for defendant to take that amount out of his business, at this season of the year, without great and irreparable

injury thereto; that said houses are annually filled with ice absolutely necessary in his business, which must be gathered and packed therein whenever it shall be in suitable condition for putting up; that for several years last past the winters have been so mild, and so little good ice has been formed, that it has been almost impossible for defendant to secure sufficient ice for his business; that long before the date when the first condemnation proceedings were had he had made a contract with one J. H. Lewis to fill his ice-houses with ice as soon as it should be in proper condition; that about the time it is said the money was paid into the hands of the sheriff the weather for the first time during the winter became cold, and the ice in suitable condition for packing; that Lewis insisted on filling his contract, and refused to release defendant therefrom without the payment of heavy damanges, and it was then too late for the defendant to make any other arrangements for putting up ice; that upon receiving information that one thousand four hundred dollars had been paid into the hands of the sheriff defendant made effort to contract with the builders of the city to put up new ice-houses, but could make no contracts with them to that end, because of the fear that the cold weather would interrupt their work and prevent them from filling their contract; that it was absolutely necessary that the ice should be put up at once because of the danger that mild weather would return, and render the ice then formed unfit for use, and prevent him from procuring the necessary ice for his business; that he had already slaughtered many thousand hogs, and had contracted and made arrangements to slaughter many thousands more, and that should he fail to procure the necessary ice for use in his business, he would be liable to lose the entire investment in the present season's packing, amounting to hundreds of thousands of dollars.

The cross-petition of defendant states, in substance, that defendant is a resident tax payer of the city of Council Bluffs; that the avenue proposed to be constructed by plaintiff runs

The City of Council Bluffs v. Stewart.

through and totally destroys defendant's property; that the city has no money in its treasury, and no means of deriving any from its general revenue for the opening and construction of said avenue, and that to put it in condition to be of any use to the city or the public an expenditure of one hundred and fifty thousand dollars will eventually be required; that the common council submitted a proposition to the voters of the city to negotiate the bonds of the city to the amount of twenty-five thousand dollars, to raise money to open said avenue, and the issuance of said bonds was authorized; that the amount of said bonds will not be sufficient to do more than pay for the right of way, leaving the additional expense to be otherwise provided for, which cannot be done out of the ordinary revenues because it requires the full tax levy authorized to meet the current running expenses of the city government; that at the time the council was authorized to issue said bonds the value of the taxable property in said city was about three million dollars, and the permanent indebtedness, including bonds, warrants and other indebtedness due and unpaid, and excluding the current running expenses, amounted to about one hundred and seventy thousand dollars, being in excess of the five per centum of such valuation, and that under the provisions of the Constitution the city has no authority to issue said bonds; that, as defendant is informed, the authorities of the city have already issued a portion of said bonds, and are about to issue the rest of them. The defendant prays that the temporary injunction issued against him may be dissolved, and that an injunction issue restraining the plaintiff from issuing any portion of said bonds.

The plaintiff replied setting forth the ordinance under which it was proposed to issue the bonds in question, and a detailed statement of the financial condition of the city, from which it is claimed that the issuance of the bonds in question would not create a debt in excess of the constitutional limitation. Upon the filing of this answer and cross-petition the defendant moved the court to dissolve the temporary injunc-

tion. In support of this motion the affidavit of defendant was filed, but it is not necessary, in the view which we take of the case, to set it forth. It is conceded by counsel that, at the time the issuance of the bonds in controversy was author-ized by the ordinance of the city and vote of the people, the assessed value of the property of the city, as shown by the last assessment, was three million two hundred and fifty-eight thousand one hundred and forty-eight dollars. The court dissolved the temporary injunction issued at the in-stance of the plaintiff, and ordered that, upon the filing by the defendant of a bond in the sum of one thousand dollars, a temporary injunction issue restraining the plaintiff and its officers from issuing or negotiating any bonds under the or-dinance referred to in plaintiff's answer to the cross-petition, which shall have the effect to increase the indebtedness of the plaintiff above the sum of one hundred and sixty-two thousand nine hundred and seven dollars and forty cents; and that, in determining the amount of said indebtedness, all outstanding bonds and warrants, on either the general or road fund, shall be included and counted, and from this amount shall be deducted any amount of money in plaintiff's treasury available for the payment of either said bonds or warrants. From these orders the plaintiff appeals.

*G. A. Holmes*, for appellant.

*Sapp, Lyman & Ament*, for appellee.

DAY, J.—The plaintiff appeals, not from the final orders made after a hearing upon evidence and a decree upon the merits, but from an order vacating a temporary injunction before granted in favor of plaintiff, and an order allowing a temporary injunction in favor of defendant upon his cross-petition. The case presents two distinct questions, which must be separately considered.

I. The grounds for the injunction claimed by the plain-

tiff, as alleged in the petition, are that by the condemnation

**1. EQUITABLE jurisdiction: trespass: injunction.**

proceedings, and the payment of the award to the sheriff, the plaintiff became entitled to the possession of the condemned property, and that the act of the defendant in taking possession of the buildings, and proceeding to fill them with ice, is a trespass upon plaintiff's property, which will retard the opening of the street, delay the plaintiff in making the improvement, and cause irreparable injury. The doctrine is elementary that a party who has a plain, speedy and adequate remedy at law cannot resort to an action in equity. *Harrington v. Cubbage*, 3 G. Greene, 307; *Piggott v. Addicks*, Id., 427; *Clausen v. Lafrenz*, 4 G. Greene, 224; *Brainard v. Holsaple*, Id., 485.

Section 3246 of the Code provides: "Any person having a valid subsisting interest in real property, and a right to the immediate possession thereof, may recover the same by action against any person acting as owner, landlord, or tenant of the property claimed."

This section furnishes the plaintiff a plain and adequate means of obtaining possession of the property, by action at law, whenever the possession of the property becomes necessary for the purpose of making the improvement in question. Courts of equity will, under certain circumstances, interfere by injunction to prevent trespasses upon real estate; but to authorize such interference there must exist some distinct ground of equitable jurisdiction, such as the insolvency of the party sought to be enjoined, the prevention of waste, or irreparable injury, or a multiplicity of suits. See 2 Story's Equity Jurisprudence, § 928; *Cowles v. Shaw et al.*, 2 Iowa, 496; *Gibbs v. McFadden*, 39 Id. 371. In section 928 of Story's Equity Jurisprudence it is said: "If the trespass be fugitive and temporary, and adequate compensation can be obtained in an action at law, there is no ground to justify the interposition of courts of equity. Formerly, indeed, courts of equity were extremely reluctant to interfere at all, even in regard to cases of repeated trespasses. But now there is not

the slightest hesitation, if the acts done or threatened to be done to the property would be ruinous or irreparable, or would impair the just enjoyment of the property in the future." The petition, it is true, does allege that the acts complained of will work irreparable injury to the plaintiff; but the specific facts averred in the petition do not justify this general statement. The most that can be claimed is that, if the ice shall be in the buildings in question at the time that plaintiff may desire to use the premises for the proposed improvements, the expense of removing the buildings will be increased. But there is no allegation of the insolvency of the defendant. For any wrongful act of the defendant increasing the expense of occupying the premises, after the plaintiff became entitled thereto by condemnation proceedings, the defendant would be liable for damages in an action at law. The recovery of such damages would afford adequate compensation. It cannot be claimed that the mere filling of the ice-houses with ice would work an injury ruinous or irreparable, or impair the just enjoyment of the property in the future. The court, we think, did not err in dissolving the temporary injunction. The case referred to by appellant in support of the position assumed (*Corporation of City of New York v. Mapes*, 4 Johnson's Chancery, 46) is not in point. In that case an injunction was denied.

II. We come now to a consideration of the order of the court granting a temporary injunction restraining the plaintiff 2. MUNICIPAL from issuing the bonds in question. Attached to corporations: constitutional the original answer of plaintiff to the defendant's law: limit of indebtedness. cross-petition is what purports to be a statement of the financial condition of the plaintiff, showing the outstanding indebtedness of the city, less cash in the treasurer's hands, to be one hundred and sixty-four thousand six hundred and eighty-one dollars and four cents, and the uncollected taxes for 1877 and prior years to be twenty-two thousand one hundred and thirty-six dollars and four cents. Afterward the plaintiff filed an amended and substituted answer, attached

to which was a statement showing a somewhat different financial condition. The order of the court, however, does not restrict the plaintiff to the issue of the bonds in question to any specified amount, but simply orders that bonds shall not be issued the effect of which shall be to increase the indebtedness of the plaintiff above the sum of one hundred and sixty-two thousand nine hundred and seven dollars and forty cents, which is five per cent upon the assessed valuation of the city, as shown by the last preceding assessment. The court also ordered that, in determining this indebtedness, all outstanding bonds and warrants be included and counted, and that any amount in the plaintiff's treasury, available for the payment thereof, be deducted therefrom. The correctness of this order may be determined without now entering into a consideration of the exact amount of the plaintiff's indebtedness at the time.

1. The appellant insists that the order is erroneous because, in estimating the amount of the plaintiff's indebtedness, the outstanding warrants are included and counted. It is urged that the constitutional inhibition applies only to bonded indebtedness, and is not applicable to outstanding warrants issued for current city expenses.

The provision of the Constitution, article 11, section 3, is as follows: "No county, or other political or municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding five per centum on the value of the taxable property within such county or corporation—to be ascertained by the last state and county tax lists, previous to the incurring of such indebtedness."

The language of this provision is very general and comprehensive. It includes indebtedness incurred in any manner, or for any purpose. We would not be justified in limiting it by construction, as contended for by the appellant.

In Scott v. The City of Davenport, 34 Iowa, 208, referring to this provision of the constitution, the following language is

employed: "The language of the constitution is broad and sweeping. It includes all corporations of the character named. It includes all debts incurred in *any manner*, or for *any purpose*. It says; in effect, that whenever the corporate indebtedness, *in the aggregate*, shall amount to five per centum on the taxable property within the corporation, no further indebtedness shall be allowed to be created in any manner, or for any purpose.

In *Grant v. The City of Davenport*, 36 Iowa, 396 (401), referring to this constitutional provision it is said: "We are not by any means inclined to limit or restrain the meaning of the word 'indebtedness,' as there used, so as to confine it to debts evidenced by bond, or to those which are due simply, but rather to give to the word its fair and legitimate meaning and general acceptation." In *French v. The City of Burlington*, 42 Iowa, 614, the correctness of the doctrine above announced was recognized and reaffirmed. In this last case it is said: "The words 'shall not become indebted in *any manner* or for *any purpose*' have an important bearing on the question at issue. If the indebtedness is created for any purpose it is within the constitutional inhibition. Certainly those words include the necessary as well as convenient improvement of the streets, as well as all other things deemed necessary and proper for the comfort or health of the people of the city. It matters not how or for what purpose the indebtedness is incurred, it is prohibited unless it can be shown to be reasonably certain such indebtedness can be liquidated and paid from the ordinary current revenues of the city." In this last case it was held that an injunction should be granted to restrain the carrying out of contracts for the grading of streets, which created an indebtedness in excess of the constitutional limitation. This last decision is an authority directly in point against the position of appellant, that the constitutional inhibition applies only to bonded indebtedness. The language of the constitutional provision is not susceptible of a construction so limiting it. The court did not err in holding that the amount

of the outstanding warrants should be considered in determining the amount of plaintiff's indebtedness.

2.   Appellant insists that the tax levy of 1878 for expenses of 1879, fifty-seven thousand one hundred and eighteen dollars; the special tax for sidewalks built and assessed against the property, eight thousand two hundred and ninety-three dollars; and two thousand dollars cash in city treasurer's possession, aggregating the sum of sixty-seven thousand four hundred and eleven dollars, must be deducted from the amount of outstanding city indebtedness, and that, when this is done, the twenty-five thousand dollars bonds in controversy may be issued without reaching the constitutional limitation.

In *Dively v. The City of Cedar Falls*, 27 Iowa, 227, it was held that the issue of warrants to any sum, however great, over five per cent of its taxable property, would not be a violation of the constitution if the city has the means in its treasury to meet its indebtedness; as, in such case, it would not become indebted within the meaning of the Constitution.

In *Grant v. The City of Davenport*, 36 Iowa, 396, it was held that the city, although indebted to the constitutional limitation, might enter into a contract with a water company for the rent of a certain number of hydrants for the period of twenty-five years, the rental to be paid annually out of current revenues which the city was authorized to raise.   In this case the true rule was declared to be "that when the contract made by the municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues, and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute the incurring of indebtedness within the meaning of the constitutional provisions."

In *French v. The City of Burlington*, 42 Iowa, 614 (618), it is said: "In ascertaining whether the contemplated indebtedness is within the current revenues, a fair and perhaps

liberal view should · be taken of the finances of the city. It will not do to say that the revenue, which is absolutely certain to be received by the collection of taxes, may not be anticipated to at least some extent, and an indebtedness accordingly contracted."

This language was employed respecting a contract for the grading of streets, which, it was claimed, could be paid for out of the current revenues, and for which it was not proposed to create a permanent indebtedness. The language employed does not, when properly understood, extend the rule beyond that recognized in *Grant v. The City of Davenport,* *supra.* It furnishes no basis for the conclusion that uncollected taxes and the levy for the current year may be deducted from the outstanding indebtedness of a city for the purpose of ascertaining the real indebtedness. The position of appellant confounds the distinction between an indebtedness and insolvency. A person who has outstanding obligations to the extent of ten thousand dollars is indebted to that amount, without regard to the means which he may have for the payment of his debts when they may mature. The same is true of a city. When a warrant is drawn upon the treasurer, if the money is in the hands of the treasurer to pay it, the reasonable expectation is that it will be presented and paid. By such act no debt, as contemplated in the constitution, is incurred. If, however, no funds are on hand to pay the warrant, a debt is incurred. If the bonds in question should be issued upon the faith of the uncollected taxes and the levy for the current year, there is no power which could prevent the city authorities from absorbing the taxes as collected in payment of ordinary current expenses. Indeed, such a course might be absolutely necessary to maintain the city government. It is plain that, if bonds should be issued in anticipation of uncollected taxes, the constitutional limitation might, and probably would, be transcended. That the constitutional provision in question applied to cities organized under special charter, be-

fore the Constitution was adopted, see *Scott v. The City of Davenport*, 34 Iowa, 208.

The judgment of the court below must, upon both points, be

AFFIRMED.