WILLIAM WICKEY, appellant, v. MUSCATINE COUNTY, appellee.

No. 47734.

(Reported in 46 N.W. 2d 32)

February 6, 1951.

274

C. J. Rosenberger and R. C. Petersen, both of Muscatine, for appellant.

A. Wayne Eckhardt, County Attorney, of Muscatine, for appellee.

BLISS, J.—The statute involved herein, in addition to the matters noted in the foreword of this opinion, provides that: the contract for the construction of the hospital shall be awarded after competitive bidding; it shall be managed by a board of trustees, receiving their expenses, but no compensation; the board may employ, fix the compensation and remove at pleasure professional, technical and other employees, skilled or unskilled, as it may deem necessary for the operation and maintenance of the hospital, and it shall order and approve all disbursements of funds in its administration; it shall make all rules and regulations governing board meetings, and the operation of the hospital and shall fix all rates, fees and charges for the services furnished "so that the revenues will be at all times sufficient in the aggregate to provide for the payment of the interest on and principal of all bonds that may be issued and outstanding under the provisions of this Act, and *for the payment of all operating and maintenance expenses of the hospital*"; "for the purpose of acquiring, constructing, equipping, enlarging or improving such

hospital or any part thereof, any such county may, pursuant to resolution of the board of supervisors of such county, from time to time issue and dispose of its negotiable interest-bearing revenue bonds payable solely as to both principal and interest from the revenues to be derived from the operation of such hospital"; the resolution may fix the maturity of the bonds not exceeding thirty years from their respective dates, and the rate of interest they may bear, not exceeding five per cent a year, payable semi-annually; after the adoption of the resolution authorizing the hospital and the bond issue, the county auditor shall publish notice thereof, giving the amount of the bond issue, in at least one newspaper of general circulation in the county, once each week for two consecutive weeks; if within twenty days following the first publication of the notice a petition—presumably of protest, though the statute does not state—is filed with the county auditor signed by qualified voters of the county to the number of twenty per cent or more of the total vote at the last preceding election for Governor, then the bonds so authorized shall not be issued unless and until the proposition to issue them shall have been submitted at an election throughout the county and approved by not less than sixty per cent of the votes cast; if such petition is filed it shall be referred to the board of supervisors at its next meeting, and it may either repeal the bond resolution or order an election, called and conducted as provided by chapter 345 of the Code of Iowa; if there be no petition filed or if the proposition is approved at such election then the board of supervisors "may proceed with the acquisition, construction, equipment, operation and maintenance of the county hospital and issuance of bonds in connection therewith, all as in this Act permitted and provided; under no circumstances shall any bonds issued under the provisions of this act be or become an indebtedness of the county within the purview of any constitutional or statutory limitation or provision, and it shall be plainly stated on the face of each bond that it does not constitute such an indebtedness, but is payable solely from the revenues aforesaid"; the bonds shall be sold in the manner and upon such terms as are prescribed in the authorizing resolution; the resolution may contain such covenants as the board of supervisors may determine to be desirable in connection with the use and application of

the bond proceeds, the operation of the hospital, and the custody and application of the revenues; the sole remedy for any breach or default of the terms of the bonds or in their issuance shall be by mandamus in a court of competent jurisdiction to compel performance and compliance therewith.

As section 3 of the Act (now section 347A.3 of the 1950 Code, I. C. A.) is the pertinent and important part of the legislation, in the instant case, we set it out in full, to wit:

"Tax for maintenance and operation. If in any year, after payment of the accruing interest on and principal due of any revenue bonds issued hereunder from the revenues derived from the operation of such hospital, there be a balance of such revenues insufficient to pay the expenses of operation and maintenance of the county hospital the board of hospital trustees shall certify that fact as soon as ascertained to the board of supervisors of such county, and thereupon it shall be the duty of such board of supervisors to make the amount of such deficiency for paying the expenses of operation and maintenance of the county hospital available from other county funds or, the board of supervisors of such county shall levy a tax not to exceed four mills in any one year on all the taxable property in said county in an amount sufficient for that purpose, it being conditioned that no general county funds or the proceeds of any taxes shall ever be used or applied to the payment of the interest on or principal of any bonds issued under the provisions of this chapter, but that such general county funds or proceeds of taxes may only be used and applied to pay such expenses of operation and maintenance of the county hospital as cannot be paid from available revenue derived from such operation."

Code section 347A.4 (section 4 of the Act) states that chapter 347A of the Code shall be construed as an alternative and independent method for the "acquisition, construction, equipment, enlargement, improvement, operation and maintenance of a county hospital, and for the issuance and sale of revenue bonds in connection therewith, and shall not be construed as an amendment of or subject to the provisions of any other law." The "other law" referred to is probably chapter 347, Code of 1950, entitled "County Public Hospitals." The hospitals, therein

provided for, are established and maintained by general ad valorem taxes.

On September 8, 1947, the board of supervisors of the defendant passed and approved a resolution of seventeen sections, authorized by chapter 192 of the Fifty-second General Assembly, and recited therein that it was "deemed necessary and advisable that the county of Muscatine * * * acquire, construct, equip, operate and maintain a county public hospital for the health and general welfare of the citizens of said county." It authorized the issuance of negotiable County Public Hospital Revenue Bonds, to the aggregate principal amount of $1,000,000 payable in specified annual amounts from 1951 to 1977 inclusive, with rate of interest to be determined. It set out a copy of the proposed bond, which recites that it and all other bonds issued are "payable solely and only from the revenues to be derived from said hospital, a sufficient portion of which revenues has been pledged and ordered set aside as a special fund for that purpose and identified as the 'County Hospital Bond and Interest Redemption Account.' This bond and the series of which it forms a part do not constitute an indebtedness of said county within the meaning of any constitutional provisions or limitations, and said county shall not be obligated to pay the same or any interest thereon except from the special fund aforesaid derived from the revenues of said hospital."

The bond also recites that "said county will continuously operate said hospital as a revenue producing undertaking; that such rates and charges will be imposed and collected for the services rendered and facilities furnished by said hospital as will provide revenues sufficient at all times to pay when due the cost of operation and maintenance of said hospital, and to pay interest on and principal of said bonds * * *."

The resolution provided for published notice for bids for the purchase of the bonds, but also provided that if no award of bonds was thereby made the bonds might thereafter be awarded at private sale upon any terms deemed for the best interests of the county without further advertisement and without regard to the bids, if any, which may have been received pursuant to the original advertisement.

Other sections of the resolution provided that: "All revenues and income from the operation of the undertaking shall be deposited with or to the credit of the county treasurer and be kept separate and apart from all other county funds"; there shall be maintained in the office of the county treasurer an account known as the "County Hospital Bond and Interest Redemption Account" into which each month there shall be paid such amount of the revenues and income from the hospital sufficient to pay the interest on and principal of the bonds as the same become due; that there shall also be maintained by the county treasurer an account known as the "County Hospital Operation and Maintenance Account" into which there shall be paid each month such an amount of the income and revenues from the hospital as shall be sufficient with any unexpended balance therein to pay the cost of operating and maintaining the hospital during the then current month, and one half of such expense for the succeeding month; the county officers and the trustees "will faithfully and punctually perform all duties with reference to the hospital required by the Constitution and laws of the state of Iowa, and will cause to be charged, collected and accounted for sufficient revenues from the operation thereof to meet the requirements of law and will segregate said revenues and make application thereof as herein provided"; and "so long as any of the bonds hereby authorized or permitted to be issued are outstanding, said hospital * * * shall be lawfully operated and maintained as a revenue producing and self-liquidating undertaking. The * * * trustees shall establish the initial schedule of rates and charges for services and facilities of the hospital prior to the time it is completed. Such initial schedule shall be revised from time to time so as to be sufficient at all times to meet the prompt payment of all expenses and charges payable therefrom as by law provided, namely, sufficient to provide for the payment of interest upon all bonds and to create a sinking fund to pay the principal thereof at or before maturity thereof, and to pay currently all proper expenses of operation and maintenance. The initial schedule and each and every revision thereof shall be nondiscriminatory and no free services or facilities shall be afforded or charity cases accepted unless appropriate and satisfactory arrangements have been made for payment of the

established rates and charges for same by some other third party, association or corporation. All charges not paid within thirty days from the date due shall be promptly referred to the county attorney with appropriate instructions to enforce collection."

The resolution also provided that any deficiency in the revenues requiring other county funds or taxes to pay operation or maintenance expense should be strictly applied to that purpose, and not for payment on the bonds. It states that its provisions constitute a contract between the county and the bondholders.

There is no dispute over the facts. All the matters noted above were stipulated to be the facts, including that plaintiff is a resident real estate owner and taxpayer of Muscatine County and qualified to bring the action; that no petition of objection to the resolution or bond issue, or requesting that the proposition be submitted to popular vote throughout the county had been filed; and that if the bonds are found to constitute a debt of defendant, the aggregate indebtedness of Muscatine County will exceed constitutional and statutory debt-limitation provisions.

The questions presented for determination on this appeal, as stated by plaintiff, are as follows: (1) Does the issuance of the revenue bonds constitute a debt of defendant? (2) Has the defendant authority to use county funds or to levy a tax on all the taxable property in the county in any year to pay any expenses in the operation and maintenance of the hospital that are not paid because the revenues of the hospital are insufficient? (3) Does the defendant have authority to sell the revenue bonds at private sale?

The defendant asserts that each question should be answered in the affirmative. The district court so ordered and decreed. Whether this action is a good faith controversy or just a friendly suit we do not know, but we know that plaintiff has given us little aid by brief or argument. The case was not argued orally.

I. We will discuss each question in its order. Plaintiff concedes that this court, in several decisions, has upheld revenue-bond issues of municipalities for financing self-liquidating projects, but insists that where, as in this case, the municipality is required to use county funds or to levy a tax to pay expenses

of operation and maintenance of a project, the revenue bonds issued in such case constitute indebtedness within the meaning of section 3 of Article XI of the Iowa Constitution, which is:

"No county, or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding five percentum on the value of the taxable property within such county or corporation —to be ascertained by the last State and county tax lists, previous to the incurring of such indebtedness."

Section 347A.2 of chapter 347A, Code 1950, I. C. A. clearly and definitely states that any bonds issued and sold thereunder shall be "payable solely as to both principal and interest from the revenues to be derived from the operation of such hospital." Again in that section, it is just as forcefully stated that "under no circumstances shall any bonds issued under the provisions of this chapter be or become an indebtedness of the county within the purview of any constitutional or statutory limitation or provision, and it shall be plainly stated on the face of each bond that it does not constitute such an indebtedness, but is payable solely from the revenues as aforesaid."

In section 347A.3 of said chapter it is stated that "no general county funds or the proceeds of any taxes shall ever be used or applied to the payment of the interest on or principal of any bonds issued under the provisions of this chapter * * *." Section 347A.1 of the chapter provides that: "The board of trustees * * * shall fix rates, fees and charges for the services thereby furnished so that the revenues will be at all times sufficient in the aggregate to provide for the payment of the interest on and principal of all bonds that may be issued and outstanding under the provisions of this chapter, and for payment of all operating and maintenance expenses of the hospital."

The above-stated provisions of the statute are clear, plain and unambiguous. There is no equivocation and there is no basis or room for construction or interpretation. They definitely require that the hospital be so administered, managed and operated that it will pay its own way and self-liquidate all of its obligations—bonds and expenses of operation and maintenance

—solely and only from the income, earnings and revenues of the hospital.

The authorizing resolution of the board of supervisors and the proposed form of the bonds contain language of the same meaning as that which we have quoted from the statute. The resolution covenants that "the county and its officers and its Board of Hospital Trustees" will carry out the intention so expressed. If said officers "shall fix rates, fees and charges for the services and facilities furnished so that the hospital revenues will be at all times sufficient" to pay the interest and principal of the bonds and all operating and maintenance expenses of the hospital, section 347A.3 will serve no purpose. We must presume that the officers will perform the duties above set forth as required of them by the statute and the resolution. If they do not so perform them they may leave themselves vulnerable to mandamus proceedings by the bondholders, or the taxpayers of the county. 38 Am. Jur., Municipal Corporations, section 473, page 155.

The provisions of chapter 347A for establishing and operating a county hospital solely by means of its earnings and revenues follow, in part, the plan of sections 397.9—397.19, Code of 1950, I. C. A., whereby cities and towns may finance the construction or purchase, and operation of various public utilities by the sale of negotiable, interest-bearing revenue bonds payable wholly from the *net* earnings of any such plant. From the name of the author or sponsor of that legislation it frequently has been referred to as the Simmer Law. Legislation of this kind has been enacted in many states, and the great weight of authority is that bonds so financed do not constitute an indebtedness within the meaning of constitutional debt limitations such as that in the Iowa Constitution, supra. We so held in Wyatt v. Town of Manning, 217 Iowa 929, 250 N.W. 141, and in Interstate Power Co. v. Incorporated Town of McGregor, 230 Iowa 42, 296 N.W. 770, 146 A. L. R. 315. Many authorities are cited in those opinions in support of our decisions in the appeals. See also 64 C. J. S., Municipal Corporations, section 1853b(1), pages 377, 378; 38 Am. Jur., Municipal Corporations, section 471, pages 152, 153.

282

In answer to plaintiff's first question we must say that if the hospital involved herein is acquired, constructed, equipped, operated and maintained, as provided in sections 347A.1 and 347A.2, and the negotiable, interest-bearing revenue bonds of Muscatine County are issued and sold as provided therein, and all the bonds, both interest and principal, and all expenses of operating and maintaining the hospital while any bonds are outstanding, are payable solely and only from the earnings, income and revenues derived from the operation of the hospital without the aid of "other county funds" or taxes in the payment of said expenses of operation and maintenance, as provided in section 347A.3, said bond indebtedness will not violate said section 3 of Article XI of the Constitution of Iowa, or be an indebtedness within the meaning thereof.

If the hospital is so managed and operated that its income, revenue or earnings are sufficient to pay the interest and the principal of the bonds coming due each year and the expenses of operation and maintenance each year, and that sufficiency of revenue continues each year until the last maturing bond is paid, then the hospital has never cost the county a cent and the county has not been required to contract any indebtedness because of it, and it has not violated the constitutional debt limitation because of the hospital. Under those circumstances and according to the decisions of this court and the authorities referred to above, the bonds would not be a debt of Muscatine County.

II. We come to the second question posed by the plaintiff and set out above. The legislature in enacting chapter 192, Laws of the Fifty-second General Assembly (chapter 347A, Code of 1950) did not fully follow the plan of the Simmer Law. Instead of making the bonds payable from the *net* earnings, as required in that statute, chapter 347A, as shown in section 347A.3 thereof, gives the payment of interest and principal of the bonds priority and preferment from the revenues over payment of the expenses of operation and maintenance. This is contrary to most of the similar statutes in other states. It is hardly logical or sound business policy, since the plant must be kept in operation if there are to be any earnings. Of a similar situation the Supreme Court of Missouri in Grossman v. Public Water Supply

Dist. No. 1 of Clay County, 339 Mo. 344, 352, 96 S.W.2d 701, 705, said: "These demands [operation, maintenance, extensions] cannot be ignored and the system starved to pay the bond-holders."

By section 347A.3 this county hospital legislation departs still further and radically from the Simmer Law. It not only defers payment of expenses or operation and maintenance out of the revenue to payment of the bond debt, but it provides that if the revenues after the payment of maturing interest and principal of the bonds in any year are insufficient to pay any or all of said expenses it is then the duty of the board of supervisors to make the amount of such deficiency from other county funds or by a tax not to exceed four mills on all of the taxable property in the county. The wiping out of such a deficit in this manner would put the county in debt under any reasonable definition of that term. If other county funds were used these funds would have to be replenished by taxes, and if they were not used then the limited tax would have to be levied. Certainly in so doing the county would incur an indebtedness in an amount equal to the deficit in the revenues, or the amount of expenses so paid, which would be an indebtedness within the meaning of the constitutional provision.

One of defendant's answers to whether the payment of these deficit expenses creates a debt is that a deficit may never arise in the revenues and it may never be necessary to receive aid from the county under section 347A.3, and therefore since such a debt would be only contingent it would not come within the constitutional provision. We would not quarrel too much over this contention. In 64 C. J. S., Municipal Corporations, section 1850, pages 368, 369, is this statement:

"Contingent liabilities. An obligation imposing on the municipality merely contingent future liability does not create an indebtedness before the happening of the contingency, at least where the arising of the contingency is solely within the control of the municipality and can occur only by its subsequent choice voluntarily made; but it has been held otherwise where the contingency is morally certain to take place irrespective of any action taken or option exercised by the municipality in the future

[Burlington Water Co. v. Woodward, 49 Iowa 58], and it has been held that a debt payable on a contingency, as on the happening of some event, such as the rendering of service or the delivery of property, is some kind of a debt, and, therefore, within the prohibition. A contract, lease, and option obligating the municipality to replace the leased premises at any time during the term in the event of total or partial destruction thereof has also been held to constitute the assumption of an indebtedness."

Cases are cited under each point. See also 38 Am. Jur., Municipal Corporations, section 464.

Defendant cites State ex rel. City of Hannibal v. Smith, state auditor, 335 Mo. 825, 835, 74 S.W.2d 367, 372, where the court passed by the question on the merits, and said: "* * * in the event the revenue is insufficient to pay the bonds and interest and the maintenance of the bridge the relator has agreed to operate the bridge out of some other fund [than the tolls], but does not agree to pay the bonds and interest out of some other fund. If, therefore, there is any liability at all in the maintenance of the bridge, it is purely contingent upon the happening of future events. It may be that there will always be sufficient revenue to maintain the bridge; time can only tell."

Judge Tipton wrote the opinion in the City of Hannibal case, just above. He also wrote the opinion in Lancaster v. County of Atchison, 352 Mo. 1039, 1046, 180 S.W.2d 706, 709, wherein he said:

"In the Hannibal bridge case, supra, we did not rule this point as contended by respondent. In that, the City of Hannibal agreed that if the toll derived from the bridge was not sufficient to pay both the operating expenses and the bonds and interest, then that City would pay the operating expenses from other available funds. We did not pass on the validity of that provision, but did hold that it was a contingent liability and, therefore, Article 10, Section 12, of our Constitution [debt limitation] was not violated."

Woodmansee v. Kansas City, 346 Mo. 919, 144 S.W.2d 137, and City of Lebanon v. Schneider, 349 Mo. 712, 163 S.W.2d 588, 592, also hold that a contingent liability does not make bonds an "indebtedness" of the city.

But there is always a legal possibility that a contingency may become a reality, and that a contingent liability may become an actual debt. The authors of this legislation must have believed that a hospital established under it might not be always a self-liquidating undertaking, and for that reason section 347A.3 was made a part of it. We assume that what each party wishes the court to do is to declare whether any contribution Muscatine County may make to the "County Hospital Operation and Maintenance Account" is or is not the incurring of a debt under the constitutional debt-limitation provision—and, if it is, what if any effect it may have upon the validity of any bond issued. Certainly any bond buyer would be interested in those answers.

The plaintiff is here challenging the authority or power of the defendant to construct and operate a county hospital and to finance it by the sale of revenue bonds, under chapter 347A, upon the ground that any indebtedness incurred would be void under the constitutional provision. The burden is upon him to establish this contention. Trindle v. Consolidated Independent Sch. Dist., 200 Iowa 370, 373, 202 N.W. 377; Holst v. Consolidated Independent Sch. Dist., 203 Iowa 288, 290, 211 N.W. 398. But there are no facts in the record before us, by stipulation or evidence, showing the value of the taxable property of the county at any time, or what is the aggregate amount of its indebtedness, or the amount of the constitutional debt limit. There is, of course, no way at this time of knowing what any of these amounts might be in any year in the future. In the absence of these facts it is therefore impossible for this court to determine whether any debt the defendant might incur in paying at any time any expense for the operation and maintenance of the hospital, as provided in section 347A.3, supra, would be void as exceeding its constitutional debt limit. Neither party contends that chapter 347A is unconstitutional, nor is there any basis for such contention. The chapter authorizes the county in section 347A.3 to make up any deficit in any year in the "County Hospital Operation and Maintenance Account" with other county funds or by a tax levy. If in doing so and assuming and paying this debt it did not exceed its constitutional debt limit, it would not violate this provision, and the debt so paid would not be void. But we have no facts in the record by which

we can determine whether the debt limit would be exceeded or not by such payment or whether the debt so made would be valid or void. The only stipulation in the record with respect to the debt of Muscatine County is that if the $1,000,000 bond issue is found to constitute a debt of defendant, the aggregate indebtedness of the county will exceed the constitutional and statutory debt-limitation provisions.

It is a troublesome question whether under the record there are operative facts justifying a judicial declaration of legal consequences, that is, whether the facts make a case for a declaratory judgment. As said by Borchard in his book, "Declaratory Judgments", Second Ed., pages 29, 30:

"It has already been observed that an action for a declaratory judgment must exhibit all the usual conditions of an ordinary action, except that accomplished physical injury need not necessarily be alleged. It is sufficient if a dispute or controversy as to legal rights is shown, which, in the court's opinion, requires judicial determination—that is, in which the court is convinced that by adjudication a useful purpose will be served. The requisites of justiciability must be present. Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court's jurisdiction, having an interest in opposing his claim. Unless the parties have such conflicting interests, the case is likely to be characterized as one for an advisory opinion, and the controversy as academic, a mere difference of opinion or disagreement not involving their legal relations, and hence not justiciable."

Speaking of "justiciability" on pages 34, 35, the author states:

"Expediency and a desire not to function in the abstract, but to decide only concrete contested issues conclusively affecting adversary parties in interest, have induced a refusal to render advisory opinions or decide moot cases. Actions or opinions are denominated 'advisory', when there is an insufficient interest in the plaintiff or defendant to justify judicial determination,

where the judgment sought would not constitute specific relief to a litigant or affect legal relations or where, by reason of inadequacy of parties defendant, the judgment could not be sufficiently conclusive. Actions or opinions are described as 'moot' when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual, genuine, live controversy, the decision of which can definitely affect existing legal relations. The issue is either not yet ripe for determination, because no opposing claim or right has yet been asserted or advanced or has arisen and hence no actual or potential conflict can be established * * *."

■ Our conclusion would be that this case is not a judicable one, or fully ripened, and is a moot case which seeks to determine abstract questions not resting upon existing or determinable facts or rights, were it not that defendant chiefly bases its defense upon a mixed question of law and facts, the character of the latter being fairly and readily inferable and identifiable from the record. Many of the expenses of operating and maintaining a hospital are reasonably comprehensible. It is its contention that, without regard to the amount of defendant's aggregate indebtedness or whether it would exceed its constitutional limit in any year in which the revenues would be insufficient to meet all operating or maintenance expenses, any expenditure by the county, under section 347A.3, would only be the payment of an ordinary, normal, current expense of the county from current revenues, and would not constitute a county indebtedness within the meaning of the debt limitation of the Constitution.

We agree that such a rule has been followed by this court since, and perhaps before, the case of Grant v. The City of Davenport, 36 Iowa 396, 401, in which the well-considered opinion was written by Justice Cole. The question in that case, as in this, was whether the debt was one in the constitutional sense. The court said:

"And we are not, by any means, inclined to limit or restrain the meaning of the word 'indebtedness', as there used, so as to confine it to debts evidenced by bond or to those which are due

simply, but rather to give to the word its fair and legitimate meaning and general acceptation.

"We have heretofore recognized and adjudicated the right and duty of a city to retain and apply its current revenues to the payment of its proper and ordinary current expenses; and this too, as against a judgment creditor, who demanded and insisted upon the application of such revenues to the payment of his judgment debt, then long over due. Coy v. The City of Lyons, 17 Iowa 1; Coffin v. The City of Davenport, 26 id. 315 [515]. This right to thus apply the current revenues to the defraying of ordinary expenses is grounded upon the fact that such a course is absolutely necessary to the life of the municipality and to the successful accomplishment of the purposes of its creation. Any appropriation of these revenues, therefore, whether by ordinance or by contract, to the payment of the ordinary expenses, would be, beyond question it seems to us, both reasonable and proper."

In that case the indebtedness was the procurement of a water plant. Continuing on pages 402, 403, the opinion states:

"But, that a supply of pure water to the inhabitants of a city for their health and domestic use, as well as for the purpose of extinguishing fires, is the duty of a city, and that the cost thereof properly comes within the term 'ordinary expenses', is not questioned by appellant's counsel; nor, indeed, could it be by anyone. * * * If it did create an indebtedness, then an ordinance providing for the payment of the salaries to the officers of the city would also create an indebtedness and would be invalid, where the maximum of indebtedness has already been reached. And such a construction would also render invalid every contract for the delivery of lumber to repair a bridge or a sidewalk, or for the hauling of gravel to repair a street, or for the employment of a laborer to work thereon.

"And, to carry the illustrations further, it is very manifest that a city, already indebted to its maximum limit, could not purchase, upon credit, real property with buildings thereon, suitable for its offices, council room, etc.; nor could it, having the real estate, make valid contracts upon its credit for the

erection of such buildings; nor employ laborers to put up such buildings * * *."

We have never departed from such rule. But. in every case the indebtedness involved was an *ordinary, normal, necessary expense;* one essential to the functioning of the municipality and to the accomplishment of its purpose; one connected with public utilities, such as waterworks, light and power, sewage systems, police instrumentalities, jails, incinerators, bridges, highways, schools, courts, and like functions. See French v. City of Burlington, 42 Iowa 614, 617; City of Cedar Rapids v. Bechtel, 110 Iowa 196–198, 81 N.W. 468; Windsor v. City of Des Moines, 110 Iowa 175, 188–192, 81 N.W. 476, 80 Am. St. Rep. 280; City of Council Bluffs v. Stewart, 51 Iowa 385, 393, 394, 1 N.W. 628; Trepp v. Independent Sch. Dist., 213 Iowa 944, 950, 951, 240 N.W. 247.

The fact that the indebtedness arises from the operation of a project that serves a worthy cause or purpose does not bring it within this rule or its object, unless it is an ordinary, normal, necessary expense in the functioning of a municipality. As stated in 64 C. J. S., Municipal Corporations, section 1851, pages 371, 372:

"Obligations necessary to maintain corporate existence. Obligations necessary to maintain corporate existence are not debts within the constitutional limitation. Furthermore there is authority to the effect that in order to authorize the incurring of municipal obligations in excess of the debt limit, it is not enough that they be incurred for municipal purposes, convenient and useful, or broadly intended to promote the public good; the purposes must be such as are strictly essential to the continued existence of the municipality. The fact that services for which expenditures are made are authorized by the charter does not make them necessary to municipal existence." (Citing authorities.) See also 38 Am. Jur., Municipal Corporations, section 452.

The fact that the legislature and the board of supervisors authorized the payment of these expenditures merits our serious consideration, but that fact is not controlling. Most public offi-

cials are under oath to support the Constitution of Iowa, but the courts are the final arbiters in passing upon constitutional questions. Whether a debt contracted by a municipal corporation offends against a debt-limiting provision of the Constitution is a question for judicial determination.

Section 3 of Article XI of the Iowa Constitution, as stated by Justice Cole in Grant v. Davenport, supra, 36 Iowa 396, 401, must be given "its fair and legitimate meaning and general acceptance." As said in Halsey & Co. v. City of Belle Plaine, 128 Iowa 467, 470, 104 N.W. 494, 495, by Justice Bishop: "It will be observed that the mandate of the Constitution is, 'Thou shalt not.'" In Council Bluffs v. Stewart, supra, 51 Iowa 385, 393, 1 N.W. 628, 634, the court said of this provision of the Constitution: "The language of this provision is very general and comprehensive. It includes indebtedness incurred in any manner, or for any purpose." French v. City of Burlington, supra, 42 Iowa 614, 617, 618, 619, speaking of the Iowa Constitution, Article XI, section 3, states: "This language is exceedingly broad, and should have no narrow or strained construction placed thereon." In Swanson v. City of Ottumwa, 118 Iowa 161, 170, 91 N.W. 1048, 59 L. R. A. 620, it is stated that the word "indebtedness", as used in the constitutional limitation, "is given a meaning much less broad and comprehensive than it bears in general usage." That is true with respect to these ordinary, normal and necessary debts that we have been discussing, but the decision in the Swanson case which gave a restricted meaning to another class of debts was severely criticized by many courts, and the decision was overruled in Brunk v. City of Des Moines, 228 Iowa 287, 291 N.W. 395, 134 A. L. R. 1391.

██ It is our conclusion that the expenses of the operation and maintenance of the county hospital authorized by chapter 347A, Code of 1950, I. C. A., are not of that ordinary, normal, reasonably necessary or essential character, as announced in the decisions of this court, in the proper functioning of Muscatine County, or in the exercise of its delegated sovereignty as a political or governmental arm of the State of Iowa. The hospital is not of that class of public institutions the operation-and-maintenance

expenses of which should be held exempt from the ban of section 3, Article XI, of the Constitution of Iowa.

What does the record show about the institution? It is a million-dollar project, and common knowledge advises us that the expenses of operation and maintenance each year will be very large, and the aggregate to 1978 will be enormous. Under this legislation, it is possible that the entire burden of operation and maintenance might fall upon the taxpayers of Muscatine County.

It will not be operated in any manner or degree as a charitable institution. It will not be a hospital where the indigent, aged, crippled or helpless will receive care or treatment without expense, nor where any lenience in credit will be extended to the needy. The county owes some duty to give aid to that class of citizens, but it will not furnish it through this county hospital.

In the proposed operation of this hospital the county will enter competition in a field of business already served by privately operated hospitals and clinics carrying the full burden of the expense of operation and maintenance. The propriety or wisdom of this legislation is not for this court to pass upon, but these facts have a bearing upon the question for decision.

The words "operation and maintenance" cover a wide expanse, and the expenses thereof may be many, large and varied. Among them will be the employment of a pathologist, technicians and analysts, and the various instrumentalities and supplies needed in conducting a hospital. Such items of expense are not the ordinary, normal, necessary expenses of a county.

Decisions from other jurisdictions are not very helpful. Article VII, section 7, of the North Carolina Constitution, reads:

"No county, city, town or other municipal corporation shall contract any debt, pledge its faith or loan its credit, nor shall any tax be levied or collected by any officers of the same except for the necessary expenses thereof, unless by a vote of the majority of the qualified voters therein."

In Palmer v. Haywood County, 212 N. C. 284, 286, 193 S.E. 668, 670, 113 A. L. R. 1195, 1197, plaintiff sued to enjoin the issuance of county bonds to construct a $30,000 annex to a county hospital. The annex was to be used principally for the

care of the indigent sick and the afflicted poor of the county. Only about seventy per cent of the existing hospital had been used for that purpose during the preceding year. The lower court denied-the relief. The supreme court divided in reversing. The majority opinion stated: "This court has repeatedly held that the building, maintenance, and operation of public hospitals is not a 'necessary expense.'" In the annotations on page 1207, under headnote 3, reading "The cost of construction and maintenance of public hospitals has on several occasions been held not to be 'necessary expenses' within Art. 7, §7, of the North Carolina Constitution" are cited Armstrong v. Gaston County, 185 N. C. 405, 117 S.E. 388 (county tuberculosis sanitarium); Nash v. Monroe, 198 N. C. 306, 151 S.E. 634; Burleson v. Spruce Pine, 200 N. C. 30, 156 S.E. 241 (public municipal hospital). All of them are cited in the reported opinion. The annotations cover decisions from Idaho and North Carolina, the only two states whose Constitutions have such a "necessary expense" provision, in which the question has been passed on with respect to various public projects.

Our answer to the second question is that any expenses of operation and maintenance of the county hospital paid under section 347A.3 of said chapter 347A will constitute "indebtedness" under Article XI, section 3, of the Iowa Constitution.

III. Respecting what effect compliance by the county with section 347A.3 may have on the revenue bonds-issued it is clear that it will have no effect, for if the debt so contracted by the county in making up the deficit in the "County Hospital Operation and Maintenance Account" is not in excess of the county's debt limit it will be a valid obligation, and if such payment should be in excess of that limit it will be void as found in Division II hereof, and because of that fact will not be made.

IV. Plaintiff's third question is whether Muscatine County has authority to sell revenue bonds at either private or public sale. Chapter 347A of the Iowa Code of 1950, I. C. A., does not provide how the bonds shall be sold, whether at public or private sale. It simply states in section 347A.2 that the county, pursuant to resolution of the board of supervisors, may from time to time issue and dispose of its negotiable-interest-bearing bonds. Section 3 of the resolution of the board of supervisors

provides that the county treasurer when so directed by the board of supervisors shall cause notice for bids for the purchase of the bonds to be published once each week for. two successive weeks in a newspaper of general circulation throughout Iowa, reciting the amount of the bonds, and other pertinent information, as required by section 75.2 of the Code of 1950. Section 3 of the resolution also provides that if an award of the bonds was not made pursuant to the published notice the bonds may thereafter be awarded at private sale upon any terms deemed for the best interests of the county, without further advertisement and without regard to the bids, if any, which may have been received pursuant to the original advertisement. This direction as to the private sale is not a compliance with section 75.4 of said Code. Any bonds sold under chapter 347A must be sold as required by chapter 75 of said Code. The trial court decreed that the bonds may be sold at either private or public sale—that is correct as far as it goes, but the court should have ordered that they be sold as required by chapter 75 of the 1950 Code of Iowa, and the district court is directed to modify its judgment and decree in that respect.

If the bonds are issued and sold as noted and provided in Division I of this opinion such debt thereby created will not constitute an indebtedness of Muscatine County within the meaning of Article XI, section 3, of the Iowa Constitution, and insofar as the judgment and decree of the district court so ordered, adjudged and decreed it is affirmed.

Such judgment and decree is reversed insofar as it ordered, adjudged and decreed that any deficiency in the revenues of the hospital for payment of the expenses of operating and maintaining the hospital that may be made up and paid by Muscatine County from other available county funds or by proceeds of the levy of a tax, as provided in section 347A.3 of the 1950 Code of Iowa, is not thereby the incurring of an indebtedness by said county within the meaning of said debt-limitation provision of the Iowa Constitution.

The order, judgment and decree in dismissing the petition of plaintiff and taxing the costs against the plaintiff is reversed, and the costs in the district court and on this appeal are ordered to be taxed against each party in equal amounts. The case is

294

remanded to the district court for entry of judgment and decree in conformity herewith.—Affirmed in part and reversed in part.

WENNERSTRUM, C. J., and GARFIELD, OLIVER, MULRONEY, and HAYS, JJ., concur.

MANTZ, J., not sitting.