# IN THE SUPREME COURT OF IOWA

No. 07–0087

Filed March 27, 2009

**STATE OF IOWA,**

    Defendant,

vs.

**MICHAEL ALLEN SLUYTER,**

    Plaintiff.

---

Certiorari to the Iowa District Court for Ringgold County, John D. Lloyd, Judge.

Acquitted indigent defendant challenges legality of district court's use of contempt powers to enforce judgment for costs of legal assistance provided to defendant. **WRIT SUSTAINED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant State Appellate Defender, for plaintiff.

Thomas J. Miller, Attorney General, Thomas W. Andrews, Assistant Attorney General, and Clinton L. Spurrier, County Attorney, for defendant.

**TERNUS, Chief Justice.**

In this original certiorari proceeding,[1] the plaintiff, Michael Sluyter, challenges the district court's use of contempt procedures to collect a cost judgment entered against him after he was acquitted of crimes at trial. Sluyter claims this judgment, representing the attorney fees for his court-appointed counsel and associated costs of his defense, is a civil liability that must be enforced through civil debt-collection procedures. He also claims the court's use of contempt powers to enforce this judgment is illegal and violates the constitutional prohibition of imprisonment for civil debts. The State asserts the court has statutory authority to use contempt to enforce its order imposing defense expenses on an acquitted defendant. The State also maintains the use of contempt, including the ultimate sanction of imprisonment, does not violate the Iowa Constitution. In addition, the State contends Sluyter's claim is not ripe because he has not yet been arrested and jailed for contempt.

We conclude Sluyter's claim is ripe and that the legislature has not authorized the use of contempt procedures against acquitted defendants to collect a judgment for the cost of legal assistance provided to such defendants. This decision makes it unnecessary to address the constitutional issue. We sustain the writ and remand this case to the district court for dismissal of the contempt proceedings.

---

[1]The State challenged the propriety of Sluyter seeking relief in an original certiorari proceeding, claiming his remedy was an appeal. Although a one-justice order was entered treating Sluyter's petition for writ of certiorari as an appeal, we now hold Sluyter properly challenged the legality of the district court's action by filing an original certiorari proceeding in this court. *See Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 863 (Iowa 2005) (stating a writ of certiorari lies when the lower tribunal has exceeded its jurisdiction); *Opat v. Ludeking*, 666 N.W.2d 597, 606 (Iowa 2003) (stating contempt order may be reviewed by certiorari). *See generally* 14 C.J.S. *Certiorari* § 11, at 59 (2006) (stating "orders exceeding the powers of the court making them are reviewable by certiorari").

## I. Background Facts and Proceedings.

Sluyter was charged with various crimes in February 2005 and, pursuant to Iowa Code section 815.9, was appointed counsel based upon his indigent status. *See* Iowa Code § 815.9(1) (2005)[2] (providing for the appointment of counsel for indigent defendants). One of the charges against Sluyter was dismissed before trial, and he was acquitted of the remaining charges in a February 2006 jury trial. Immediately after trial, the district court issued an order taxing Sluyter with court-appointed attorney fees and associated costs as required by Iowa Code section 815.9(3), (4).

The day after Sluyter's trial, the court issued a show-cause order to monitor Sluyter's payment of the judgment. From February 2006 to August 2006, the trial court issued several additional show-cause orders to check on Sluyter's payment of the fees and costs. With each show-cause order, the court stated that a warrant would issue for Sluyter's arrest should he fail to appear at the scheduled hearing. Sluyter was not personally served with any of these orders, and although his attorney attended some of the hearings, Sluyter did not.

In August 2006, the district court issued an order requiring Sluyter to pay the cost of his legal assistance in installments of $200 a month and to execute a wage assignment with the clerk of court. *See* Iowa Code § 815.9(4), (7), (8).[3] In response to this order, Sluyter's trial counsel filed a

---

[2]Unless otherwise indicated, all citations are to the 2005 Iowa Code. For the most part, the 2005 Iowa Code sections relevant here remain unchanged in the 2009 Iowa Code.

[3]Section 815.9 provides in relevant part:

> 4. If the case is a criminal case, all costs and fees incurred for legal assistance shall become due and payable to the clerk of the district court by the person receiving the legal assistance not later than the date of sentencing, or if the person is acquitted or the charges are dismissed, within thirty days of the acquittal or dismissal.
>
> . . . .

motion requesting clarification of Sluyter's obligations. In this motion, counsel maintained that Sluyter was liable for defense costs only, not restitution or prosecution costs. In addition, counsel asserted that, if fees and costs are not paid, a judgment should be entered, which would be enforced through execution, not contempt. *See id.* § 815.9(9) ("If any costs and fees are not paid at the times specified under subsections 4 and 5, a judgment shall be entered against the person for any unpaid amounts."). Defense counsel further asserted that using contempt to enforce the judgment is prohibited by article I, section 19 of the Iowa Constitution. *See* Iowa Const. art. I, § 19 ("No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in case of fraud."). Counsel requested that the court (1) specify the amount of the costs Sluyter was obligated to pay, (2) vacate all prior orders regarding installment payments and wage garnishments, and (3) enter judgment against Sluyter for the amount due. In its response, the State argued the court could enforce its fees-and-costs order through contempt powers because Iowa Code section 815.9 does not specifically preclude use of contempt to enforce orders taxing costs in criminal cases and because Iowa Code section 665.2(3) specifically authorizes use of contempt when there is an illegal resistance to a court order. *See* Iowa Code § 665.2(3) (listing acts constituting contempt, including an "[i]llegal resistance to any order or process made or issued by [the court]").

---

7. If all costs and fees incurred for legal assistance are not paid at the times specified in subsections 4 and 5, the court shall order payment of the costs and fees in reasonable installments.

8. If a person is granted an appointed attorney or has received legal assistance in accordance with this section and the person is employed, the person shall execute an assignment of wages.

Iowa Code § 815.9(4), (7), (8).

The trial court issued an order, "amend[ing] the judgment previously entered against [Sluyter] to show the specific amount of $7,513.52." The court rejected Sluyter's argument it could not use its power of contempt to enforce payment of Sluyter's court-ordered obligations. Nonetheless, because Sluyter had not been personally served with the prior show-cause orders, the court vacated all prior contempt proceedings. The court then set a hearing to determine the amount of reasonable installments for payment of the judgment and ordered that Sluyter be personally served with the order.

Prior to the hearing, Sluyter's counsel filed a motion in which he again challenged the trial court's use of contempt procedures by way of show-cause orders. In response, the court ruled it had authority to use contempt pursuant to Iowa Code section 909.5, which provides "[a] person who is able to pay . . . court-imposed court costs for a criminal proceeding . . . and who refuses to do so, or who fails to make a good faith effort to pay the . . . court costs . . . shall be held in contempt of court." *Id.* § 909.5.

Subsequently, the court issued an order finding Sluyter was employed, that an income-withholding order should be entered, and that Sluyter should be required to pay $50 a month toward his court-ordered obligations. The court set a show-cause hearing for January 8, 2007, ordering Sluyter to appear or a warrant would issue for his arrest. Sluyter was not personally served with the order.

Sluyter did not appear at the January 8 show-cause hearing. The trial court noted that Sluyter had made minimal payments to the judgment, but $8251.82 was still outstanding. The court set another show-cause hearing for February 5, ordering that Sluyter pay $50 per month on the obligation. The trial court specified that a warrant for arrest would issue should Sluyter fail to appear. Sluyter was not personally served with the order.

Meanwhile, Sluyter's counsel initiated this original certiorari proceeding. At the scheduled hearing, counsel informed the trial court that review had been sought. Thereafter, the district court issued an order providing that Sluyter's filing of a certiorari petition in the supreme court did not negate the district court's authority to pursue contempt proceedings for enforcement of its judgment for fees and costs. The court set another hearing and again ordered Sluyter to personally appear or a warrant for his arrest would issue. Sluyter did not appear at the scheduled hearing, and the district court ordered that he be arrested.

Before this court, Sluyter raises two issues: (1) the district court was not authorized to use contempt proceedings to collect a judgment entered pursuant to Iowa Code section 815.9 against an acquitted defendant; and (2) use of the court's contempt power to collect this judgment violated article I, section 19 of the Iowa Constitution. In addition to rebutting these arguments, the State contends these issues are not ripe.

## II. Scope of Review.

We review the district court's interpretation of a statute for correction of errors at law. Iowa R. App. P. 6.907 (2009) (formerly Iowa R. App. P. 6.4); *State v. Wade*, 757 N.W.2d 618, 622 (Iowa 2008). We review challenges to the constitutionality of a statute de novo. *Wade*, 757 N.W.2d at 622.

## III. Ripeness.

As noted earlier, the State claims this case is not ripe because Sluyter has not been arrested or put in jail for failing to pay the judgment for court-appointed attorney fees. A case is ripe for adjudication when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative.[4] *Stream v. Gordy*, 716 N.W.2d 187, 193 (Iowa 2006); *Wickey v.*

---

[4]We consider ripeness in the sense of avoiding the issuance of advisory opinions rather than as a doctrine applied in cases related to administrative agencies and the requirements of exhaustion and finality. *Compare Wickey v. Muscatine County*, 242 Iowa

*Muscatine County,* 242 Iowa 272, 286–87, 46 N.W.2d 32, 39–40 (1951). Sluyter claims the district court has no authority to use its contempt powers to enforce the cost judgment; the State claims the court has such authority. There is nothing speculative or hypothetical about this controversy because the district court has already issued several show-cause orders under its contempt power to monitor Sluyter's payment of the judgment. Therefore, an actual, present controversy exists with respect to the legality of the court's actions.

Sluyter also claims imprisonment for a failure to pay the cost judgment violates the debtor clause of the Iowa Constitution. At this point in the proceedings, Sluyter has not yet been held in contempt, much less jailed. Thus, the State asserts, any decision by this court would be premature. The ripeness requirement may be satisfied by a "direct threat of personal detriment." *Doe v. Bolton,* 410 U.S. 179, 188, 93 S. Ct. 739, 745, 35 L. Ed. 2d 201, 210 (1973); *accord Epperson v. Arkansas,* 393 U.S. 97, 102, 89 S. Ct. 266, 269, 21 L. Ed. 2d 228, 233 (1968). Proof that a litigant faces a threat of imprisonment establishes a direct threat of personal detriment. *See Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S. Ct. 2301, 2309, 60 L. Ed. 2d 895, 906 (1979) (holding person need not " 'first expose himself to actual arrest or prosecution' " to challenge the constitutionality of a criminal statute so long as there is "a credible threat of prosecution thereunder" (quoting *Steffel v. Thomas,* 415 U.S. 452, 459, 94 S. Ct. 1209, 1216, 39 L. Ed. 2d 505 (1974))); *Mangual v. Rotger-Sabat,* 317 F.3d 45, 57 (1st Cir. 2003) (holding threat of prison makes challenge ripe); *see also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118,

---

272, 286–87, 46 N.W.2d 32, 39–40 (1951) (holding issue is not ripe for determination—is not justiciable—when there is no present controversy and opinion would be merely advisory), *with State v. Iowa Dist. Ct.,* 616 N.W.2d 575, 578 (Iowa 2000) (considering ripeness of claim to avoid premature adjudication of issue before administrative decision has been made).

128–29, 127 S. Ct. 764, 772, 166 L. Ed. 2d 604, 616 (2007) (in noncriminal context, stating "where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge . . . the constitutionality of a law threatened to be enforced"). Any threat of imprisonment must, however, be objectively reasonable. *See Mangual*, 317 F.3d at 57; *see also Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S. Ct. 2318, 2325–26, 33 L. Ed. 2d 154, 163–64 (1972) (requiring "specific present objective harm or a threat of specific future harm" to establish standing). Sluyter argues he has an objectively reasonable fear of imprisonment for failing to satisfy his obligation to pay the judgment entered against him for attorney fees and costs.

The State seeks to enforce Sluyter's payment of the judgment through the use of contempt proceedings. Under Iowa law, a district court may punish contempt with a sentence of imprisonment in the county jail not to exceed six months. *See* Iowa Code § 665.4. The fact that the law authorizes imprisonment does not end the inquiry, however. We must also determine whether, under the facts here, it was reasonable for Sluyter to fear that this particular district court would imprison him for contempt based upon his failure to pay the judgment.

We conclude Sluyter's fear of imprisonment was objectively reasonable. The history of this case indicates the trial court was determined to enforce its judgment for fees and costs. The day after the jury acquitted Sluyter, the district court issued a show-cause order, which was followed by more than eight additional show-cause orders to monitor Sluyter's payment of the judgment. By issuing these show-cause orders to check on Sluyter's satisfaction of the judgment, the district court relied upon its contempt power. Ultimately, the trial court exercised its contempt power when it ordered a warrant be issued for Sluyter's arrest. Although based on

Sluyter's failure to appear, the arrest warrant demonstrated the district court's willingness to enforce its orders by exercising its power to imprison Sluyter when he failed to obey the court's orders. Under these circumstances, Sluyter faced an objectively reasonable threat of being jailed for his failure to pay the judgment for attorney fees and costs. This threat is a personal detriment that is sufficient to render Sluyter's constitutional challenge to the court's use of its contempt power ripe for consideration.

**IV. Court's Authority to Use Contempt Power to Enforce Judgment For Court-Appointed Attorney Fees and Costs Entered Against an Acquitted Defendant.**

**A. Rules of Statutory Interpretation.** " 'The primary rule of statutory interpretation is to give effect to the intention of the legislature.' " *State v. Iowa Dist. Ct.*, 616 N.W.2d 575, 578 (Iowa 2000) (quoting *State v. Casey's Gen. Stores, Inc.*, 587 N.W.2d 599, 601 (Iowa 1998)). To ascertain legislative intent, we look to the language of the statute. *Casey's Gen. Stores*, 587 N.W.2d at 601. We consider not only the commonly understood meaning of the words used in the statute, but also the context within which they appear. *Id.* We presume that, when the legislature enacts a statute, it intends " '[a] just and reasonable result.' " *Iowa Dist. Ct.*, 616 N.W.2d at 578 (quoting Iowa Code § 4.4(3)). In addition, we "construe statutes that relate to the same or a closely allied subject together so as to produce a harmonious and consistent body of legislation." *Casey's Gen. Stores*, 587 N.W.2d at 601.

If a statute may be construed in more than one way, we adopt the construction that does not violate the constitution. *State v. Mitchell*, 757 N.W.2d 431, 434 (Iowa 2008). Constitutional questions should be avoided when an appeal can be decided on other grounds. *State v. Kukowski*, 704 N.W.2d 687, 690 (Iowa 2005).

**B. Statutory Basis for Judgment.** Under Iowa Code section 815.9, an indigent defendant who was appointed counsel at state expense must reimburse the state for the total fees and costs of legal assistance provided to the person whether the prosecution results in a conviction, acquittal, or dismissal. Iowa Code § 815.9(3). Acquitted defendants must pay all fees and costs to the court within thirty days of their acquittal. *Id.* § 815.9(4). If the costs are not paid as specified, the court must order payment in reasonable installments, *id.* § 815.9(7), and if the person is employed, the person must execute a wage assignment and the court must enter an order for assignment of income in a reasonable amount to be determined by the court, *id.* § 815.9(8). Finally, if fees and costs are not paid, the court is required to enter a judgment against the person for any unpaid amounts. *Id.* § 815.9(9). This statute does not provide that a defendant's reimbursement obligation is enforceable by contempt.

**C. Court's Inherent Authority to Use Contempt Power to Enforce Judgment.** Although it is not entirely clear whether the State relies on the court's inherent authority to hold persons appearing before them in contempt, we think our decision in *LaRue v. Burns*, 268 N.W.2d 639 (Iowa 1978), disposes of this contention. In *LaRue*, a convicted defendant challenged the district court's authority to impose a jail sentence for the defendant's contempt in failing to pay court costs assessed against him in a criminal prosecution. 268 N.W.2d at 641. We held that a "judgment for costs against a criminal defendant creates a civil, not a criminal, liability." *Id.* We noted "[a]n exception exists if a statute makes court costs part of the fine to be imposed as penalty for an offense." *Id.* We concluded that, in the absence of such an exception, "a judgment for costs is to be enforced by execution." *Id.* (citing Iowa Code § 626.1 (1975) ("Judgments or orders requiring payment of money . . . are to be enforced by execution.")).

We observed that, "[w]hile a court has inherent power to punish for disobedience of its orders, such power is subject to restriction." *Id.* at 642. Moreover, the contempt power, we said, "is to be exercised only to promote fair and impartial administration of the law." *Id.* We pointed out the State in *LaRue* had made no attempt to enforce the cost judgment using the execution procedures authorized by section 626.1 prior to invoking the court's contempt power. *Id.* (discussing Iowa Code section 626.1 (1975)). We held that, "[i]n light of the circumstances of this case, the availability of the § 626.1 remedy, and policies underlying the contempt power, . . . there was no justification for imposition of a jail sentence."[5] *Id.*

We think the same reasoning applies even more powerfully here with respect to an acquitted defendant. Because Sluyter was not convicted of the criminal charges, the cost judgment entered against him could not have been "part of the fine to be imposed as penalty for an offense." *Id.* at 641. Therefore, the judgment created a civil liability. Although a district court has inherent power to punish persons who fail to obey its orders, our court made clear in *LaRue* that section 626.1 limited that power and required the State to enforce a civil cost judgment "by execution." *Id.*

That is not to say the court's contempt power can never be called upon in the course of the state's efforts to collect a cost judgment against an acquitted defendant. Chapters 626 and 630 set forth the various procedures

---

[5]In *LaRue*, we also rejected the State's claim the court had statutory authority to use contempt to enforce the cost judgment entered against the convicted defendant in that case. The State relied upon Iowa Code section 762.32 (1975), which authorized use of contempt to punish willful nonpayment of fines. *See also* Iowa Code § 789.17 (1975) (same). In addressing the State's invitation to apply section 762.32 in *LaRue*, this court distinguished costs from fines. *LaRue*, 268 N.W.2d at 641. Because section 762.32 applied only to fines, not costs, we held it did not authorize punishment for contempt for failure to pay costs. *Id.* The State correctly points out that section 762.32 has been amended since our *LaRue* decision and the amended statute, in part, can now be found in section 909.5. We will discuss section 909.5 later in our opinion.

for, and auxiliary to, execution on a judgment, as well as the duties of a judgment debtor. *See* Iowa Code chs. 626, 630. Should the judgment debtor willfully disobey court orders requiring compliance with these obligations, the court's contempt power may be invoked. *See id.* §§ 626.1 (stating that obedience to orders requiring the performance of any act other than the payment of money "is to be coerced by attachment as for a contempt"); 630.11 (stating any judgment debtor who fails to appear for examination or who fails to fully answer interrogatories "will be guilty of contempt, and may be arrested and imprisoned until the debtor complies").

**D. Court's Authority Under Section 909.5 to Invoke Contempt Power.** We now consider whether the district court had statutory authority to use contempt proceedings to enforce payment of the cost judgment. *Cf. id.* §§ 252A.6(6) (stating party who willfully fails to comply with support order may be punished for contempt), 598.23(1) (authorizing court to punish for contempt any party who willfully disobeys court's temporary order or final decree in dissolution action). The district court believed, and the State asserts on appeal, that Iowa Code section 909.5 provides that authority. That statute states:

> A person who is able to pay a fine, court-imposed court costs for a criminal proceeding, or both, or an installment of the fine or the court-imposed court costs, or both, and who refuses to do so, or who fails to make a good faith effort to pay the fine, court costs, or both, or any installment thereof, shall be held in contempt of court.

*Id.* § 909.5. The State argues that, because the statute expressly includes "court-imposed court costs for a criminal proceeding," it authorizes the court to use its power of contempt to enforce a chapter 815 cost judgment. Sluyter responds that section 909.5 does not apply to acquitted defendants, and if it does, it violates the debtor clause of the Iowa Constitution.

Although section 909.5 does not specifically state whether it applies to convicted defendants, acquitted defendants, or both, its reference to "[a] person" appears all-encompassing at first blush. On the other hand, this provision appears in the Iowa Corrections Code, which deals with criminal corrections matters such as sentencing procedures, sentences, parole, the department of corrections, correctional programs, the parole board, deferred and suspended sentences and judgments, probation, and fines. *See* Iowa Code § 901.1 ("Chapters 901 to 909 shall be known and may be cited as the '*Iowa Corrections Code.*' "). *See generally id.* chs. 901–909. Chapter 815, on the other hand, appears in the Iowa Code of Criminal Procedure, *id.* § 801.1, which governs the procedure in all criminal proceedings, *id.* § 801.2. The legislature's decision to place the authority to enforce a cost judgment in the Iowa Corrections Code is relevant to our search for legislative intent. In *Iowa District Court,* this court concluded the placement of the statute at issue in the Code chapter governing the sentencing of felons rather than in the chapter governing reduction of sentences for good conduct evidenced a legislative intent that the statute "operate as a minimum sentence as opposed to a restriction on the power of the parole board." 616 N.W.2d at 579.

The legislative history of this statute also indicates a conscious decision by the legislature to restrict the contempt power to criminal liabilities. The predecessor statutes to section 909.5, Iowa Code sections 762.32 and 789.17, both provided that a defendant willfully refusing to pay a judgment for a fine could be punished through contempt. Iowa Code §§ 762.32, 789.17 (1975). Section 762.32 was in the chapter governing trial of nonindictable offenses, and section 789.17 was found in the chapter dealing with judgments. *See id.* In the 1976 criminal code revision, these statutes were replaced with a new statute stating:

> Any person who is able to pay a fine, or an installment of a fine, and who refuses to do so, or who fails to make a good faith effort to pay his or her fine, or any installment thereof, shall be held in contempt of court.

1976 Iowa Acts ch. 1245, § 905 (codified at Iowa Code § 909.5 (1979)). Although one of the predecessor statutes was located in a chapter governing criminal procedure, the legislature chose to place the new statute in the Iowa Corrections Code. Later, when the legislature decided to make a failure to pay court–imposed court costs in a criminal proceeding subject to contempt, it amended section 909.5 in the Iowa Corrections Code to accomplish that goal. 1985 Iowa Acts ch. 52, § 1 (codified at Iowa Code § 909.5 (1985)). Significantly, at the time of this amendment, an indigent, acquitted defendant had no obligation to reimburse the state for the cost of legal assistance provided to him. *See* Iowa Code §§ 910.1(4) (1985) (defining "restitution" to include "court-appointed attorney's fees or the expense of a public defender"), 910.2 (requiring the sentencing court to "order that restitution be made by each offender . . . to the county where conviction was rendered for court costs, court-appointed attorney's fees or the expense of a public defender when applicable") (1985). It was not until 1999 that the legislature imposed an obligation on acquitted defendants to pay court-appointed counsel fees and defense costs. 1999 Iowa Acts ch. 135, § 27 (codified at Iowa Code § 815.9 (1999)).

This legislative history shows the legislature did not have civil cost judgments against acquitted defendants in mind when it amended section 909.5 in 1985, so it certainly had no intent at that time to apply the statute to acquitted defendants. Secondly, when civil cost judgments were authorized in 1999, the legislature took no action to expand the reach of section 909.5 beyond its criminal corrections context, as it could have easily done by expressly incorporating a contempt remedy in section 815.9 or by

making a cross-reference to section 909.5. Yet, it did neither. In summary, the legislature's failure to expand the reach of section 909.5 to acquitted defendants suggests a legislative intent that the remedies permitted by section 909.5 apply only to cost judgments entered as part of the penalty for a criminal offense.

As a final matter, we consider the possible constitutional infirmities of a statute that denies indigent acquitted defendants the protective exemptions available to other civil judgment debtors whose debt must be enforced through execution. In *James v. Strange,* 407 U.S. 128, 92 S. Ct. 2027, 32 L. Ed. 2d 600 (1972), the United States Supreme Court held that a Kansas recoupment statute violated the equal protection rights of indigent defendants. 407 U.S. at 142, 92 S. Ct. at 2035, 32 L. Ed. 2d at 611. The Kansas statute required the entry of a judgment against indigent defendants for any expenditures made on their behalf to defend against criminal charges. *Id.* at 130, 92 S. Ct. at 2029, 32 L. Ed. 2d at 604–05. Although the judgment could be enforced like any other civil judgment, indigent defendants were denied the exemptions available to other civil judgment debtors. *Id.* at 135, 92 S. Ct. at 2031–32, 32 L. Ed. 2d at 607. The Court held the State could not "impose unduly harsh or discriminatory terms merely because the obligation is to the public treasury rather than to a private creditor." *Id.* at 138, 92 S. Ct. at 2033, 32 L. Ed. 2d at 608–09; *accord Alexander v. Johnson,* 742 F.2d 117, 124 (4th Cir. 1984) (stating one "basic feature[] of a constitutionally acceptable attorney's fees reimbursement program" is that "the defendant accepting court-appointed counsel cannot be exposed to more severe collection practices than the ordinary civil debtor").

The remedy for which the State advocates in the present case suffers from the same deficiency as the remedy at issue in *James.* Enforcement of

the cost judgment by contempt allows the State to bypass all the protections enjoyed by civil judgment debtors under our execution and related statutes and send Sluyter directly to jail. This potential constitutional infirmity may explain why the legislature did not include a contempt remedy in chapter 815. *See generally State v. Haines*, 360 N.W.2d 791, 795 (Iowa 1985) (upholding statute requiring *convicted* defendant to repay court-appointed attorney's fees against equal-protection claim, noting this "sanction" was "designed to instill responsibility in criminal offenders" and was "based on a legitimate concern of the legislature, rehabilitation of the criminal defendant" (emphasis added)).

In view of the legislative history of the relevant statutes, the location of section 909.5 in the Iowa Corrections Code, and the constitutional problems raised in circumventing civil judgment collection protections, we conclude section 909.5 does not authorize the power of contempt to enforce a civil cost judgment such as the one entered against Sluyter.

## VI. Disposition.

The district court has no authority to use its contempt power to enforce the cost judgment entered against Sluyter, an acquitted defendant. Accordingly, we remand this case for dismissal of the contempt proceedings.

**WRIT SUSTAINED.**

All justices concur except Baker, J., who takes no part.