# IN THE SUPREME COURT OF IOWA

No. 14–0207

Filed May 27, 2016

Amended July 29, 2016

**DAVID L. TAFT JR.,**

Plaintiff,

vs.

**IOWA DISTRICT COURT FOR LINN COUNTY,**

Defendant.

Certiorari to the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

A person committed under the Sexually Violent Predator Act alleges statutory criteria for suitability for placement in a transitional release program violate the Due Process and Equal Protection Clauses of the Iowa and the United States Constitutions. **AFFIRMED.**

Philip B. Mears of Mears Law Office, Iowa City, for plaintiff.

Thomas J. Miller, Attorney General, Jeffrey S. Thompson, Solicitor General, and John B. McCormally, Assistant Attorney General, for defendant.

**CADY, Chief Justice.**

In this case, we consider the constitutionality of statutory conditions on the suitability of a civilly committed sexually violent predator for the transitional release program. As part of an annual review, the district court denied a final hearing for discharge or suitability for placement in a transitional release program to David Taft based in part on his failure to fulfill statutory criteria for a finding of suitability for a transitional release program. Taft challenges two of the criteria as violating his due process rights and denying him equal protection under the Iowa and United States Constitutions. We conclude the issues are not ripe for consideration under the posture of this case. On our review, we affirm the order of the district court.

## I.  Background Facts and Proceedings.

Taft was convicted in 1987 for lascivious acts with a minor. He received one two-year and two five-year sentences. The sentences were ordered to be served concurrently. Taft was discharged in 1991. He was arrested for reoffending one week later with two more children. He was convicted and served a sentence of incarceration until discharged on January 10, 2005. On March 30, 2005, district court proceedings were initiated to commit Taft as a sexually violent predator under the Commitment of Sexually Violent Predators Act, Iowa Code chapter 229A (2005). The jury found Taft suffered from a mental abnormality that made it more likely than not that he would reoffend. Taft was committed to the Civil Commitment Unit for Sexual Offenders (CCUSO).

CCUSO provides a mandatory treatment program for committed persons. The program is focused on the treatment and rehabilitation of repeat sexual offenders. It has five phases, beginning with an introductory first phase and ending with Phase V transitional release.

Phase V prepares committed persons for reentry into society. Progress through the program is measured by evaluating ten treatment areas as well as the committed person's attitude, behavior, and personal risk factors. The treatment areas evaluated include the realization, acquisition, and demonstration of skills relating to the following: disclosure; insight; personal victimization; empathy; health, hygiene, and leisure skills; cognitive coping strategies; sexual behaviors; relapse prevention; intimacy; and problem solving.

Committed persons are entitled to an annual review to determine whether the person's circumstances have sufficiently changed to warrant a final hearing for the court to determine if the committed person should be discharged or is suitable for placement in a transitional release program. Iowa Code § 229A.8(5)(*e*) (2013). Discharge or release is conditioned on a change in the mental abnormality making the committed person not likely to engage in sexually violent offenses, while suitability for placement in transitional release is based on the statutory criteria laid out in Iowa Code section 229A.8A. *Id.* Each annual review starts with "a rebuttable presumption . . . that the commitment should continue." *Id.* § 229A.8(1). The court considers evidence provided by both sides, but the committed person bears the burden "to prove by a preponderance of the evidence that there is relevant and reliable evidence to rebut the presumption" and thereby generate a jury question on the need for continued commitment. *Id.* § 229A.8(5)(*e*)(1).

In 2013, Taft petitioned this court for certiorari based on the outcome of his 2011 annual review, which denied him a final hearing. *Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 312 (Iowa 2013). We examined the effect of a 2009 amendment to Iowa Code section 229A.8(5)(*e*) specifying the legal standard of evidence—by a preponderance that

relevant and reliable evidence exists—a committed person must offer at an annual review hearing to establish entitlement to a requested final hearing before the court or a jury. *Id.* at 317–18. We held the amendment expanded the evidence considered by the court to include evidence from both sides and directed the court to only weigh reliable evidence rather than all admissible evidence. *Id.* at 318. In other words, the court is to determine whether the committed person generates a fact question on either a change in their mental abnormality or their suitability for transitional release placement. *Id.* Taft additionally raised a claim that the transitional release program criterion in section 229A.8A(2)(*e*) requiring the offender be issued no major discipline reports for six months imposed an unconstitutional precondition on release unrelated to his dangerousness or mental abnormality, but we held the claim had not been properly raised or decided at the trial court level and dismissed the constitutional challenge as not preserved. *Id.* at 322–23.

On August 2, 2013, the district court held a hearing for Taft's first annual review following our decision. During the hearing, Taft raised and argued his constitutional challenge to the statute along with his petition for discharge or placement in the transitional release program. In particular, Taft challenged paragraphs (*d*) and (*e*) of Iowa Code section 229A.8A(2), which require a treatment-provider-accepted relapse prevention plan and a six-month period with no major disciplinary reports, as unconstitutional. The parties argued before the court at the annual review hearing on the issue and submitted written briefs.

In order for committed persons to be suitable for placement in the transitional release program, the person must meet nine requirements set forth by the legislature. Iowa Code § 229A.8A(2).

A committed person is suitable for placement in the transitional release program if the court finds that all of the following apply:

*a.* The committed person's mental abnormality is no longer such that the person is a high risk to reoffend.

*b.* The committed person has achieved and demonstrated significant insights into the person's sex offending cycle.

*c.* The committed person has accepted responsibility for past behavior and understands the impact sexually violent crimes have upon a victim.

*d.* A detailed relapse prevention plan has been developed and accepted by the treatment provider which is appropriate for the committed person's mental abnormality and sex offending history.

*e.* No major discipline reports have been issued for the committed person for a period of six months.

*f.* The committed person is not likely to escape or attempt to escape custody pursuant to section 229A.5B.

*g.* The committed person is not likely to engage in predatory acts constituting sexually violent offenses while in the program.

*h.* The placement is in the best interest of the committed person.

*i.* The committed person has demonstrated a willingness to agree to and abide by all rules of the program.

*Id.* A different subsection adds a tenth condition requiring committed persons to agree to register as a sex offender to be eligible for placement in the transitional release program. *Id.* § 229A.8A(4).

The court examined two annual reports from 2012 and 2013 regarding Taft's progress through treatment and making recommendations on whether Taft should be considered for discharge or would be eligible for a transitional release program. The first report, offered by the State, was written by CCUSO psychologist Dr. Tracy Thomas based on Taft's treatment records, documents from Taft's 2005 commitment proceeding, and personal interviews with Taft and CCUSO staff. Treatment records, dated February 19, 2013, showed Taft had not

progressed from Phase II of the treatment program during his eight years in the program and detailed Taft's struggles with multiple treatment areas. The annual report concluded Taft continued to show characteristic signs of antisocial personality disorder, continued to engage in behaviors that were part of his past offense cycle, and was "more likely than not to reoffend." The report recommended Taft not be discharged from CCUSO. The report also concluded Taft did not meet seven of the ten statutory criteria requirements for placement in transitional release.

Taft submitted an independent progress review report prepared by clinical psychologist Dr. Craig Rypma. Dr. Rypma's report indicated that Taft's pedophilia diagnosis was based on past behavior without current indicators. He concurred in the diagnosis of antisocial personality disorder but did not believe the condition necessarily affected the ability of a person to control their sexual behavior.[1] Dr. Rypma indicated Taft met nine out of the ten requirements for the transitional release program and that the requirement he did not meet, regarding major discipline reports, did not relate to sexual violence and was not relevant to Taft's transfer to the transitional release program. Dr. Rypma concluded Taft was ready for discharge. He found it was "reasonable to assume" Taft's risk to reoffend had fallen below the more-likely-than-not threshold because he was now forty-three-years old and his last sexual crime had occurred over twenty years earlier. If not discharged, Dr. Rypma

---

[1]We note that we have determined that antisocial personality disorder may be a sufficient mental abnormality on its own to support civil commitment if it affects the individual person's likelihood to commit a sexually violent offense, a determination made in an individualized inquiry. *In re Det. of Barnes*, 689 N.W.2d 455, 459–60 (Iowa 2004).

recommended "with a reasonable degree of professional certainty" that Taft should move to transitional release.

In response to Taft's request for discharge, the court found that while some improvement had occurred since the prior review's reports, more work remained to be done. The court found Taft had failed to present evidence showing progress in several important areas of his mental abnormalities and therefore had not rebutted the presumption of continued confinement. The court noted that even Taft's expert appeared to equivocate on whether he should be discharged or moved to the transitional release program and did not clearly address Taft's antisocial personality disorder. The court found inconsistencies between the descriptions in Dr. Rypma's report of Taft's treatment records and the actual treatment records. The court further noted a heavy reliance on statistical studies of recidivism rather than Taft's actual treatment.

In this petition, Taft does not challenge the ruling against a final review hearing for discharge or the reliability determination made by the district court concerning Dr. Rypma's report. The district court ruled Taft's challenge to the constitutionality of two of the criteria in section 229A.8A(2) was not ripe for adjudication because he failed to meet several other criteria for a final hearing on transitional release and determined the totality of the evidence showed Taft still at risk to reoffend.

Taft petitioned for certiorari based on the district court's application of the *Taft* evidentiary burden and the constitutionality of two criteria in paragraphs (*d*) and (*e*) of Iowa Code section 229A.8A(2). We granted certiorari review on this case on May 22, 2014. After certiorari was granted, the district court held an annual review hearing for Taft's 2014 annual report. The court granted Taft a final hearing on the

questions of discharge and transitional relief, and a jury trial followed. Taft withdrew his challenge in this case based on the court's application of *Taft* after he was granted a final review hearing from his 2014 annual review. However, he continued to pursue his constitutional claim from the 2013 review based on the transitional release program statutory criteria, asserting the criteria could impede his right to liberty in the future. This is the claim now before us.

## II. Scope of Review.

"We review certiorari actions for correction of errors at law." *Taft*, 828 N.W.2d at 312. We examine the court's jurisdiction and the legality of its actions, including the proper application of law and evidentiary support for factual findings. *Id.* "We review constitutional challenges de novo." *In re Det. of Matlock*, 860 N.W.2d 898, 901 (Iowa 2015). Statutes are presumed constitutional, and "[t]he challenger bears a heavy burden, because it must prove the unconstitutionality beyond a reasonable doubt." *State v. Hernandez-Lopez*, 639 N.W.2d 226, 233 (Iowa 2002). The challenging party "must negate every reasonable basis upon which the court could hold the statute constitutional." *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005) (quoting *State v. Biddle*, 652 N.W.2d 191, 200 (Iowa 2002)).

## III. Ripeness.

"[J]usticiability doctrines define the judicial role; they determine when it is appropriate for the . . . courts to review a matter and when it is necessary to defer to the other branches of government." Erwin Chemerinsky, *Constitutional Law: Principles and Policies* 49 (4th ed. 2011). "The constitutional requirement of ripeness is basically a manifestation of the rule that courts should not address hypothetical questions." 3 Chester James Antieau & William J. Rich, *Modern*

*Constitutional Law* § 48.30, at 610 (2d ed. 1997). "A case is ripe for adjudication when it presents an actual, present controversy, as opposed to one that is merely hypothetical or speculative." *State v. Wade*, 757 N.W.2d 618, 627 (Iowa 2008) (quoting *State v. Iowa Dist. Ct.*, 616 N.W.2d 575, 578 (Iowa 2000)). We seek to avoid issuing advisory opinions on possible future injuries, though we may find our present-controversy requirement "satisfied by a 'direct threat of personal detriment.'" *State v. Sluyter*, 763 N.W.2d 575, 579–80, 579 n.4 (Iowa 2009) (quoting *Doe v. Bolton*, 410 U.S. 179, 188, 93 S. Ct. 739, 745, 35 L. Ed. 2d 201, 210 (1973)).

Taft challenges the constitutionality of two statutory criteria used to determine suitability for the transitional release program under Iowa Code section 229A.8A. He argues these criteria pose unconstitutional impediments to his due process right to be free from confinement. In considering this claim, we first observe that the statutory criteria only limit who the court can find *suitable* for placement in a transitional release program. Therefore, the statute does not necessarily guarantee placement in the program even if the criteria for suitability are met. *See* Iowa Code § 229A.8A(2).

Instead, the CCUSO treatment program rules limit placement in transitional release to those persons in Phase V of the treatment program, with the suitability determination by the court as one of several criteria to be met before the committed person qualifies for the advancement to Phase V. Taft's current placement in Phase II of the program is based on his evaluations and the professional judgment of those treating him within the CCUSO program, and he has not challenged that placement. We have previously found that failure to progress through the treatment program due to behavioral reports is "an

integral part of the treatment under a cognitive-behavioral model," not an adverse action violating due process rights. *Swanson v. Civil Commitment Unit for Sex Offenders*, 737 N.W.2d 300, 307, 309–10 (Iowa 2007). It is conceivable there could be a statutory right to placement in a transitional release program upon the court finding all criteria have been met without a move to Phase V within the program, but that case is not before us now. We decline to make any such determination absent facts supporting a claim to the right.

Even assuming *arguendo* we determined the challenged criteria violate Taft's substantive due process liberty interests, such a determination would not have any effect on the district court's determination at the annual review. The district court denied Taft's request for a final hearing based on equivocation about his suitability for release, questions on the reliability of Dr. Rypma's report, and the findings by the CCUSO expert that Taft needed to demonstrate significant improvement in several treatment areas and had not met his burden to show he was a suitable candidate for transitional release or discharge.

At argument, Taft agreed he would not qualify under the statute for the transitional release program even if he were not required to meet the challenged criteria. Resolution in his favor would not result in any change in the court's evaluation of the reliability of Dr. Rypma's report or make any change in Taft's circumstances after this annual review and, thus, would resolve no controversy. Accordingly, we decline to address his substantive due process and equal protection challenges to the statutory criteria regarding major discipline reports and treatment provider approval of his relapse prevention plan as not ripe. We decline

to evaluate the constitutionality of the criteria until a live controversy is before us.

### IV. Conclusion.

We conclude that on this record, the issue of whether the statutory criteria for suitability for placement in a transitional release program found in paragraphs (*d*) and (*e*) of Iowa Code section 229A.8A(2) are unconstitutional under the Due Process and Equal Protection Clauses of the United States and Iowa Constitutions is not ripe for adjudication.

**AFFIRMED.**