# IN THE COURT OF APPEALS OF IOWA

No. 24-0883
Filed December 17, 2025

**IN RE DETENTION OF ROBERT E. SWANSON,**

**ROBERT E. SWANSON,**
       Respondent-Appellant.
_____

       Certiorari to the Iowa District Court for Black Hawk County, Joel Dalrymple,

Judge.

       A committed person challenges the district court's order continuing his civil

commitment as a sexually violent predator. **WRIT ANNULLED.**

       Matthew S. Sheeley, Assistant State Public Defender, for appellant.

       Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

       Considered without oral argument by Ahlers, P.J., and Langholz and

Sandy, JJ.  Buller, J., takes no part.

**LANGHOLZ, Judge.**

With a history of sexual offenses dating back to his teenage years in the 1960s, Robert Swanson was civilly committed as a sexually violent predator in 2002. He seeks unconditional release from his civil commitment under Iowa Code section 229A.8 (2024). But after a final hearing, the district court found that the State proved beyond a reasonable doubt that "Swanson continues to suffer from a mental abnormality which makes him likely to engage in predatory acts of sexual violence if not confined." So the court ordered Swanson's continued civil commitment. And Swanson challenges that order, arguing that the State failed to meet its burden to prove that he continues to suffer from a mental abnormality and remains likely to commit a sexually violent offense if discharged.

Swanson's challenge must be brought as a petition for a writ of certiorari rather than as an appeal because the order denying unconditional release is not a final judgment. On the merits, Swanson's challenge fails. Substantial evidence supports the district court's findings that the State proved beyond a reasonable doubt that Swanson still suffers from a mental abnormality—antisocial personality disorder—and that he remains likely to commit a sexually violent offense if discharged. We thus annul the writ of certiorari.

## I. Background Facts and Proceedings

"Swanson ha[s] a long history of committing sexually violent offenses." *In re Det. of Swanson*, 668 N.W.2d 570, 573 (Iowa 2003). As our supreme court detailed two decades ago in its decision affirming his original civil commitment:

> He was charged with his first sexual offense in 1964, at the age of fourteen. In 1973, he was convicted for raping a fourteen-year-old girl. He was released from prison in 1979 and returned there in 1980

after another conviction, this time for sexual abuse in the third degree. He also allegedly assaulted another woman in 1980 who did not report the crime before the statute of limitations on the offense had run. In a letter to the governor in 1984, Swanson pleaded for additional state treatment programs for sex offenders such as him, claiming that he had raped five or six additional women between 1964 and 1973. In the same letter, he claimed he had raped at least one more woman between 1979 and 1980. Finally, while imprisoned for the second time, Swanson called or wrote several women in the Marshalltown area, apparently by randomly finding phone numbers and addresses that were listed with only a single, female name.

*Id.* On his release from prison in 2001, Swanson started writing letters and calling a young woman he met at an area business, making her uncomfortable to the point she reported him to the police. *Id.* at 572–73. This followed his past pattern of "randomly contact[ing] single women with whom he had had little or no prior connection in an effort to befriend them. . . . [S]ome of these women later became victims of his violent sexual assaults." *Id.* at 573 (footnote omitted).

The State eventually petitioned to civilly commit Swanson as a sexually violent predator under Iowa Code chapter 229A (2001). After a trial, Swanson was found to be "a sexually violent predator who should be confined for treatment." *Id*. at 574. Swanson unsuccessfully appealed. *See id.* at 577; *see also* Iowa Code § 229A.7(3) (granting a statutory right to appeal the initial determination that a person "is a sexually violent predator"). Swanson began treatment at the Civil Commitment Unit for Sexual Offenders ("CCUSO") in 2002. He progressed to the third of five treatment phases. But he then sent a threatening letter to a federal judge—who is a woman—according to Swanson, he "did so intentionally to leave CCUSO." He got his wish, serving seven and a half years in federal prison before returning to CCUSO in 2016. This time he did not progress through treatment. By 2024, he was still in the second phase.

Over the years since his initial civil commitment was affirmed, Swanson has engaged in much litigation about his civil commitment. *See Swanson v. Civ. Commitment Unit for Sex Offenders*, 737 N.W.2d 300 (Iowa 2007); *Swanson v. Iowa Dist. Ct.*, No. 07-1336, 2009 WL 213020 (Iowa Jan. 30, 2009) (per curiam); *In re Det. of Swanson*, No. 11-1859, 2014 WL 1245442 (Iowa Ct. App. Mar. 26, 2014); *In re Det. of Swanson*, No. 18-0715, 2019 WL 1940737, at *2 (Iowa Ct. App. May 1, 2019) (per curiam). This current round began in December 2021, when Swanson petitioned for discharge from his commitment. In response, the district court set an annual review hearing. And at the hearing, with the State's agreement, the court found that Swanson had presented enough evidence to entitle him to a final hearing over whether his commitment should continue or he should be released. After multiple postponements, that one-day final hearing was held in April 2024.

At the hearing, Swanson detailed some of his sexual offense history. He testified that the rape of the child in 1973 happened because he was frustrated at the child's sister and angry about his marriage. His next conviction—for third-degree sexual abuse—happened when he met a woman at a laundromat, invited her back to his apartment, and then raped her. He said that he did so because he was "frustrated" and "angry" about his relationships with his fiancée and his mother ending. He also described another woman he raped around the same time. He had been on a date, decided the woman looked attractive, and just "spontaneous[ly]" pushed her down and started raping her. Again, when asked why, he said he was "frustrated, upset with myself, guilty, angry" because he was losing his engagement.

When asked about his triggers for sexually offending, Swanson said he did not have triggers "now" or "then," explaining, "It was just a flash point," and asserting that the assistant attorney general questioning him didn't "understand anger rape obviously." Swanson claimed he should be fine upon release because he is "not interested in sex anymore." He also told the court, "There was never any fantasy in planning," and that he had no dynamic risk factors (those that one can change).

Swanson admitted to frequent behavior reports at CCUSO, but he emphasized they were not tied to anything sexual. When asked about the incidents, he kept protesting they did not matter because the reports were "expunged." And in response to questioning about his aggression, even at his age, he answered "I may dance differently than I did years ago but I can still dance. These people have no respect."

Swanson was seventy-four at the time of the hearing. He has had several serious health conditions over the last ten years, including a broken hip, broken femur, broken rib, respiratory problems, and spinal stenosis. He uses a walker to assist with his mobility. But he has also been written up for throwing it at a nurse.

Swanson told the court he would not seek out any treatment if discharged. He was unable to say where he would live. He did not know how he would pay for housing. And Swanson could not name any community supports aside from a friend in his nineties.

Three experts testified: Swanson's treating psychologist at CCUSO and two competing forensic psychologists—one offered by the State and one by Swanson. The treating psychologist testified about Swanson's pattern of reports for

"noncompliance with rules, derogatory comments, disruptive behavior, disrespect, verbal aggression, threats, verbal threats." He shared that in group sessions, Swanson is "often giving feedback that's either a catalyst or an attempt to incite others," and he rarely does work outside of group to try to progress through the program. He also observed that Swanson's reaction to not getting his own way was to be resistant, ignore directions, engage in verbal aggression, and make threats of physical aggression.

The State's expert witness has done annual review evaluations of persons in CCUSO since 2011, including Swanson's 2023 and 2024 reviews. In preparing the 2024 annual review, Swanson told her that "he did not have a desire to move forward in treatment, . . . in his mind he is essentially done with treatment." And Swanson indicated that—notwithstanding prison terms and significant treatment at CCUSO—"the sexual offenses he committed as an adult . . . were misunderstandings or had been incorrectly relayed in the record." According to the State's expert, Swanson has "a very significant pattern of behavior that indicates . . . mental abnormality. The antisocial thinking, beliefs, and behavior." The expert also opined that it is a "red flag" that Swanson blames others for his actions and sees himself as the victim because without accepting the factors causing sexual offending—namely "his rage towards women or his power and control issues or his hostility"—he will not learn how to mitigate them. And the expert found this lack of progress very concerning because Swanson's offending was driven by those antisocial and hostility factors.

Based on all this, the State's expert believed that Swanson's antisocial personality disorder mental abnormality remained a concern and that Swanson

would be likely to engage in sexually violent predatory acts if discharged. But the expert did agree that she would no longer diagnose Swanson with paraphilia with nonconsent—one of the two mental abnormalities that was present at the time of his original commitment. And while she agreed that recidivism tends to significantly decline when rapists are over seventy, she opined that Swanson's continued aggressive and physically violent behavior places him "outside of that norm"—indicating that his age did not reduce his risk as much because his antisocial traits have not decreased.

Swanson's expert has worked with sex offenders since 2007 as a treatment provider and evaluator. He agreed that Swanson still has a personality disorder with antisocial traits with many behavior challenges, but he did not think that the diagnoses predisposed Swanson to any sexual behaviors. Like the State's expert, Swanson's expert does not think Swanson has a paraphilia with nonconsent. He testified that his conclusions only varied from the State's expert "very minimally," with differing views on the effect of age, and he agreed Swanson has not made progress in his treatment. And he does not think Swanson has a mental abnormality making him likely to engage in predatory acts of sexual violence. Under questioning from the court, the expert noted Swanson will "try to manipulate the system and get what he wants," but he did not equate that to likelihood of committing a sexually violent predatory act.

The district court ultimately found that the State met its burden and thus ordered the continued commitment of Swanson. The court summed up:

> Swanson himself boasts that despite his age, he can still act
> violently. Without reciting each and every diagnostic tool, test, and
> factor set forth by [the competing experts], the Court has reviewed

their testimony and reports and overall finds [the State's expert] to be more credible. In sum, upon review of all of the testimony and exhibits submitted, the Court finds Swanson was previously convicted of a sexually violent offense; Swanson continues to suffer from a mental abnormality which makes him likely to engage in predatory acts of sexual violence if not confined in a secured facility; and Swanson, by reason of his mental abnormality, more likely than not would engage in continued predatory acts of sexual violence. Upon such findings, the Court orders the continued commitment of Swanson.

## II. Form of Review

As a preliminary matter, we address what form our review should take. Following the district court's ruling, Swanson filed a notice of appeal. Although filed a month after the effective date of the amended Iowa Rule of Appellate Procedure 6.108, the notice of appeal did not comply with its requirement to "specify the statute or rule providing the right to appeal." The parties' appellate briefing also did not address the question. And so, the supreme court issued an order noting there is no right to appeal from an annual review hearing and ordering the appellant to "file a statement indicating whether he is seeking some other form of appellate review and, if so, why such review should be granted." *See In re Det. of Schuman*, 2 N.W.3d 33, 43–44 (Iowa 2024) (holding that because committed persons "are under the trial court's continuing jurisdiction until their unconditioned release, and there is no final judgment until nothing is left for the court to do but execute the judgment," an annual-review-hearing ruling placing a committed person "in transitional release is not a final decision appealable as of right," but treating the improper notice of appeal by the State as a petition for a writ of certiorari (cleaned up)). After reviewing the parties' responsive statements, the

supreme court decided "that the issue regarding the proper form of appellate review should be submitted with the appeal."

Swanson argues that, notwithstanding the supreme court's order and *Schuman*, the district court's denial of unconditional release should be appealable as a matter of right under Iowa Rule of Appellate Procedure 6.103(1) to maintain parity with the State's ability to seek appellate review of an unconditional-release order. The State responds that this ruling is not final; and any disparity is because the district court retains jurisdiction in non-final rulings—like this one—but does not in the case of an unconditional release. Following the supreme court's reasoning in *Schuman*, we agree the ruling denying Swanson's unconditional release is not a final judgment because Swanson is still "under the trial court's continuing jurisdiction." *Schuman*, 2 N.W.3d at 44 (cleaned up).

Swanson alternatively asks that if we reject his direct-appeal argument, we treat his brief and argument as a petition for writ of certiorari. Again, following *Schuman*, we agree that certiorari is the proper method for reviewing the order denying Swanson unconditional release. *See id.* And under the appellate rules, we must "proceed as though the proper form of review had been requested." Iowa R. App. P. 6.151(1). We thus consider Swanson's notice of appeal as a petition for writ of certiorari, grant the petition, and proceed to the merits of Swanson's challenge to the district court's order denying unconditional release.

### III.     Sufficiency of the Evidence Supporting Continued Commitment

"We review certiorari actions for correction of errors at law." *Taft v. Iowa Dist. Ct.*, 879 N.W.2d 634, 638 (Iowa 2016). In reviewing such actions, "[w]e examine the court's jurisdiction and the legality of its actions, including the proper

application of law and evidentiary support for factual findings." *Id.* "Illegality exists when the court's factual findings lack substantial evidentiary support, or when the court has not properly applied the law." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998).

Once a person has been civilly committed as a sexually violent predator under chapter 229A, "a rebuttable presumption exists that the commitment should continue." Iowa Code § 229A.8(1). But here, the parties agreed that Swanson rebutted that presumption and was entitled to a final hearing to decide whether "[t]he mental abnormality of the committed person has so changed that the person is not likely to engage in predatory acts constituting sexually violent offenses if discharged." *Id.* § 229A.8(5)(e)(1)(a). At the final hearing, the State thus had the burden to prove beyond a reasonable doubt that Swanson's "mental abnormality remains such that the person is likely to engage in predatory acts that constitute sexually violent offenses if discharged." *Id.* § 229A.8(6)(d); *see also Swanson*, 2019 WL 1940737, at *2.

Swanson argues that the evidence presented was insufficient for the district court to find that he continues to suffer from a mental abnormality and remains likely to commit a sexually violent offense if discharged. But we can easily dispense with his first challenge to the court's factual findings. True, Swanson no longer suffers from one of the two mental abnormalities that resulted in his original commitment. But all the expert witnesses agreed that he still suffers from the other—antisocial personality disorder. This is substantial evidence supporting the court's finding that he still suffers from a mental abnormality. Swanson makes no argument that this mental abnormality does not meet the statutory definition. And

that argument would fail if he made it, as it has failed in the past. *See Swanson*, 2019 WL 1940737, at *3; *In re Det. of Stenzel*, 827 N.W.2d 690, 702 (Iowa 2013) ("[A] diagnosis of an antisocial personality disorder affecting a respondent's ability to control behavior . . . can support a jury finding that someone is a sexually violent predator.").

So the real fight is on his second challenge: whether he remains likely to commit a sexually violent offense if discharged. Swanson again starts by pointing to the expert witnesses' opinions that he no longer has a diagnosis for "paraphilia, not otherwise specific, nonconsent"—a deviant arousal to nonconsensual sex— one of the two abnormalities leading to his commitment. Swanson disagrees with the State's expert's opinion that his antisocial personality disorder is also linked to his risk of reoffending. And he relies on his own expert's opinion that his prior offenses were caused by a high sex drive combined with the personality disorder, and without the continuing sex drive the risk is no longer there.

But Swanson's testimony shows it was anger and frustration at other women that led to the rapes he committed. And at trial, he still described himself as "not a happy man. I'm an angry person . . . I'm very bitter." The court also considered Swanson's lack of insight into his sexual offending cycle, his failure to develop interventions or identify triggers, his continued verbal and physical aggressions to those around him, and Swanson's pride "that despite his age, he can still act violently." And so, the court's factual finding crediting the State's expert's opinion that the same forces driving Swanson's prior offenses continue to exist is supported by substantial evidence.

Swanson also argues that at age seventy-four, he is no longer more likely than not to reoffend. He leans into the statistical instruments' lower recidivism rates for offenders of his age and argues that even if he did still pose a risk, it does not reach the more-likely-than-not level. We have observed before that the statistical instruments are only a risk assessment tool, "[i]t is the factfinder's duty to determine whether an accused . . . more likely than not will engage in acts of a sexually violent manner." *In re Det. of Barr*, No. 21-1305, 2022 WL 10861330, at *6 (Iowa Ct. App. Oct. 19, 2022); *see* Iowa Code § 229A.2(14)–(15) (defining sexually violent offense and sexually violent predator").

The State's expert's evaluation showed Swanson with a moderate-high risk level with the static risk factors (those that are immutable), including a reduction for his age, and a high risk level on his dynamic factors (those factors a patient can change through time, effort, and focus), for a combined high priority category for sexual recidivism. Swanson's expert's evaluation found moderate risk with the static factors and a high score on the dynamic factors, leading to a "well above average risk." And the treating psychologist testified that Swanson is aware of the dynamic risk factors, "but he doesn't do the work to" identify and implement better behavior and problem solving. Yet admittedly, even the State's expert scored Swanson with a zero for "sex drive/preoccupation," "sex as coping," and "deviant sexual interests" factors, though a note indicates the last factor might be suppressed due to the CCUSO environment.

Still, Swanson has a known antisocial personality disorder, which he has taken no steps to address or treat. And he continues to show verbal and physical aggression towards those around him when he is angry or frustrated, as the district

court emphasized based on Swanson's own testimony.  His method of discharging that anger has manifested multiple times in sexually hurting random women in his orbit, and he "harshly criticizes female staff as abusing their authority."  He minimizes any fault and blames others, showing little remorse for his actions.  Given the limits of substantial-evidence review, we see no basis to reject the factfinder's determination that "anger, hostility, and frustration toward women previously drove him to commit his previous sexually violent offenses and those issues of anger, hostility, and frustration remain today."  Nor has Swanson undermined the court's ultimate finding that he would more likely than not engage in continued predatory acts of sexual violence if not confined in a secure facility.

Bottom line, the district court's findings are supported by substantial evidence.  Swanson makes no other challenge to the legality of the court's actions.  We thus annul the writ of certiorari.

**WRIT ANNULLED.**